MATT SOLICH, JR., Plaintiff and Respondent, v. HELEN WILSON HALE, Defendant and Appellant.

No. 11208.
Submitted October 17, 1967. Decided December 27, 1967.
435 P.2d 883.

Chadwick H. Smith (argued), Helena, for appellant.
Michael Chilton (argued), Helena, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal brought by the defendant, Helen Wilson Hale, hereinafter referred to as the appellant, from a jury verdict and judgment awarding $7,000 in damages to Matt Solich, Jr., hereinafter referred to as the respondent, in an action for damages resulting from an alleged breach of a lease, which alleged breach was the result of failing to repair after a fire.

On July 3, 1962, appellant leased to the respondent "premises situate on the west side of North Main Street [now North Last Chance Gulch], in the said City of Helena, between Edwards Street and Sixth Avenue, and being on the ground floor in what is known as 'THE WILSON BUILDING,' and designated as No. 20½ N. Main Street, known as the 'MINT BAR,' and also the basement room underneath the first mentioned room."

The Wilson building consisted of an original building purchased by Mrs. Hale's father and an addition built by the father to the north of the original building. The northern outside wall of the original building became a two foot thick stone rubble wall separating the two portions of the building.

At the time of the fire, passageways had been knocked

through this stone rubble wall on the second and third floors and these stories were operated as a hotel. The ground floor was occupied by various businesses, including the respondent. The building was operated as one for insurance, managerial, and heating purposes. In effect there was only one building, with two sections or portions. This conclusion is supported by the lease agreement involved in the present case which spoke only of the "THE WILSON BUILDING" and did not distinguish between the two portions of the building.

Under the original lease agreement, respondent's premises had been located solely on the south side of the stone rubble wall. However, the respondent had asked for and received permission to cut holes through this wall in order that he might locate certain facilities on the north side of the rubble wall. These new facilities included restrooms, an office, and a dance floor. An examination of the blueprints for the building reveals that the facilities located on the north side of the rubble wall are at least one-third as large as those on the south side of the rubble wall.

The fire which occurred on April 28, 1965, and which brought on the suit involved in this appeal completely gutted that portion of the building which was north of the stone rubble wall. The roof and upper two floor of that portion of the building south of the rubble wall were extensively damaged. The first floor of the south portion, wherein the respondent had the larger part of his business, suffered smoke and water damage.

Appellant, operating through her agent John Schroeder of Schroeder Brothers Company, the insurer of the building, and under the advice of an architect appointed by her insurance company and an order of the City of Helena to vacate, repair or demolish the building, ordered the tenants, including Solich, to vacate the building, which was then demolished. Respondent, feeling that the premises were repairable and that appellant had violated the lease, brought suit against her.

At the close of respondent's case, the attorney for the appellant made a motion for a directed verdict in accordance with Rule 50, M.R.Civ.P. The grounds for this motion were (1) that plaintiff had failed to prove that any act or omission by the appellant was responsible for the damage suffered by the respondent; (2) that the building was destroyed; (3) that under R.C.M.1947, § 42-109, which states that the hiring of a thing is terminated by the destruction of the thing hired, the lease was terminated; and ,(4) that there was no agreement between the two parties which would prevent the working of this particular statutory provision. The denial of this motion is specified as error by the appellant in her appeal to this court.

Section 93-5205, R.C.M.1947, provides that a directed verdict may be given by a judge:

"Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto."

Following a rule set down by a long line of cases, this court in reviewing the correctness of the district court in refusing to grant the motion for a directed verdict must view the evidence "from the standpoint most favorable to plaintiff, and every fact must be deemed proved which the evidence tends to prove. [Citing case.] No case should ever be withdrawn from the jury when reasonable men might draw different conclusions from the evidence." Mellon v. Kelly, 99 Mont. 10, 20, 41 P.2d 49, 52, Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4.

The only factual issue presented by this case, other than damages, was whether the building had been destroyed, or whether it had been merely damaged. This was recognized by the trial court when it denied the motion for a directed verdict.

Once this basic factual question is resolved, all other questions posed by the case are questions of law to be decided by the court. If it is found that the building is destroyed, by

operation of law the lease would be terminated. Only an agreement to the contrary between the two parties could prevent the action of this statute. The only agreement present is the lease itself, and the interpretation of that document is a matter for the court, section 93-2501-2, R.C.M.1947.

The problem for this court is to decide whether the evidence points so clearly to destruction that reasonable men could come to no other conclusion, and hence, only questions of law were presented.

Appellant has presented for this court's consideration two tests to be used in determining whether a building was destroyed. The first test is that of untenantability. Under this test the thing hired is considered destroyed: "When destruction of the demised premises is of such a nature that it cannot be used for the purposes for which it was rented and cannot be restored to a fit condition by ordinary repairs, made without unreasonable interruption of the lessee's use." Presbyterian Distribution Services v. Chicago National Bank, 28 Ill.App.2d 147, 171 N.E.2d 86, at 90.

Under the second test suggested to this court a building is considered destroyed if the cost of restoration of the building as it was immediately before the fire is more than one-half of the value of the property at the time of the fire. Both of these tests were presented to the jury in the instructions given by the trial court in the present case.

We fail to see how, even viewing the evidence most favorable to the plaintiff, and considering as proven everything which the evidence tends to prove, that a reasonable man could come to any other conclusion but that the building involved here was destroyed.

As to the first test, the complaint indicates that the respondent himself considered the building to be untenantable after the fire. The record contains no evidence as to how long it would take to return the building to a tenantable condition. However, the record clearly indicates that more than ordinary

repairs would be necessary in order to return the building to a tenantable condition.

One of the witnesses for the respondent, Oscar Baarson, an engineer, testified that, after a somewhat cursory examination, he felt that a "part" of the building could be repaired. His testimony seemed to indicate that that part of the building occupied by Matt's Club was repairable. However, whether one adopts the theory that there was only one building, or that there were two, one must still be concerned with the repairability of the whole building, and not just that part occupied by Matt's Club.

Respondent's second witness as to the repairability, Kermit Mueller, also made somewhat cursory examination of the building. He did not go up onto the roof and did not examine the parts of the building for structural soundness except by observing them. He concluded from his observations that the building was repairable. However his comments indicated that he considered anything short of building a new building to be "repairing." His comments on repairability were certainly not limited to ordinary repairs.

Appellant had two witnesses who testified on the subject of repairability. These witnesses, both of whom were architects, carried on more extensive examinations than respondent's witnesses. Both concluded that the building was structurally unsound and that any repair would amount to virtual rebuilding of the structure. In view of the above testimony it would seem that under the first test no reasonable person could come to any other conclusion but that the building was destroyed.

The second test of destruction, the cost of repair, would also seem to lead to the conclusion that the building was destroyed. A report issued by the insurance company which insured the building, prepared with estimates supplied by building contractors, estimated that the cost of repairing the building would be approximately $209,717.25. And this would be the repair of a building which immediately before the fire had a

value of $197,235.00. Given such figures no reasonable man could come to any other conclusion that under the second test the building had been destroyed.

In arriving at this conclusion this court has not merely considered the premises leased by the respondent. We have considered the whole of the building in which those premises were located. For the leased premises did not and could not exist independently of the whole building. A reading of the lease shows that this was not the intention of the parties. The lease by reference made the exterior walls and roof of the Wilson Building a part of the lessor-lessee relationship. The lease agreement obligated the appellant to keep the roof and exterior walls of the entire building in good repair. The premises wherein the bar was located formed only a part of the thing hired.

In arriving at this conclusion, that the building was destroyed, this court has somewhat ignored the argument presented to it by both parties as to whether there was one or two buildings involved. If one adopts the assumption that two buildings were involved, the evidence still indicates that the building in which most of respondent's business was located was destroyed. In addition, parts of respondent's business were located in both buildings. A destruction of even the "so-called" north building would be sufficient to terminate the lease under the statute involved.

If one adopted the position that only one building was involved, and considering all the facts plus the wording of the lease which refers only to "THE WILSON BUILDING," and drawing no distinction between the portions thereof, the result would be the same. The entire building was destroyed and the lease, which by reference included the roof and outer walls of the whole building, was terminated.

Only an agreement between the parties could have the effect of preventing the application of the statute involved. Since the only agreement presented to this court between the parties

was the lease itself, and obligation on the part of the appellant to rebuild a destroyed building must be found there.

The pertinent part of the lease dealing with the subject of whether the appellant had an obligation to rebuild or only to repair is as follows:

"And the said party of the first part [owner, Mrs. Hale] shall bear the expense of all exterior alterations and repairs including repairs and maintenance to the roof."

The question presented by this language is whether an obligation to make repairs or alterations would obligate the lessor to make such "repairs" if those repairs would amount virtually to rebuilding the building. The cases dealing with this matter, and they are numerous, are not always consistent. Comprehensive attention is given to the problem in 38 A.L.R.2d 674. That annotation states, at page 685:

"Where the property has been destroyed or rendered untenantable and the lease contains covenants to 'repair' rather than covenants to 'restore' or 'rebuild,' the cases support the general principles (1) that if the covenant to repair is general in scope, the lessor's duty is to restore or rebuild the premises, but (2) if the covenant to repair is limited or specific, he is— or at least may be—under no such duty."

This same annotation on page 705 states:

"It is well settled that the use of language which can be construed only to limit or make specific the duty of a lessor to repair structures on the leased premises may prevent an extension of the duty so as to embrace an obligation to restore or rebuild, in case of substantial or total destruction by fire * * *. A covenant * * * to keep the roof or other parts of a leased building in repair does not bind him to rebuild * * *."

It would seem from a reading of the above authorities and cases discussed therein, plus a reading of the lease agreement itself, that the covenant of the appellant was in the nature of a limited covenant to keep the exterior parts of the building in repair. We cannot imply from such a limited cove-

nant an obligation upon the part of the appellant to rebuild the destroyed building.

Because of the fact that only questions of law were presented by this case, and because these questions of law should have been resolved in favor of the appellant, it was error for the lower court to deny a motion for a directed verdict. The decision of the lower court is reversed and it is remanded with instruction to enter a verdict for the appellant.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN C. HARRISON concur.