No. 80-205

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

BRUCE A. KOSENA, d/b/a THE PUB,

Plaintiff and Appellant,

-vs-

NORMAN E. ECK, TRUSTEE OF
JOHN A. ECK, TRUST,

Defendants and Respondents.

_____

Appeal from:  District Court of the First Judicial District,
              In and for the County of Lewis & Clark, The
              Honorable H. William Coder, Judge presiding.

Counsel of Record:

    For Appellant:

        Robert T. Cummins, Helena, Montana
        Charles A. Smith, Helena, Montana

    For Respondent:

        Jackson, Oitzinger & Murdo, Helena, Montana

_____

Submitted on Briefs:  April 15, 1981

Decided:  October 29, 1981

Filed:  OCT 29 1981

Thomas J. Kearney
                                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff appeals, and defendants cross-appeal, from a judgment entered in Lewis and Clark County District Court declaring the rights of the plaintiff as tenant and the defendants as landlords.

The trial court ruled in favor of tenant that a valid lease agreement existed, that the rental due under the lease was $650 per month, and that landlords must pay tenant $5,000 as their share of the costs of repairs made by tenant. The trial court ruled in favor of landlords that tenant did not have a valid mechanics' lien for repairs which he had completed on the premises, and that the landlords were entitled to prejudgment interest on the rental payments. The trial court further ruled that both parties must bear their own costs and attorney fees.

We affirm the first two rulings as to the existence of the lease agreement and the amount to be paid--$650 per month. We remand to the trial court for further findings as to the amount awarded to tenant to compensate him for repairs to the premises. We reverse the trial court's ruling that no mechanics' lien existed, the award of prejudgment interest, and the order that each side bear its own costs and attorney fees.

On February 29, 1968, J. A. Eck and Marie A. Eck, the parents and predecessors of the landlords, leased a portion of a Helena business building to Reginald L. Brewer and William O. Bahny. The other portion of this building, known as "Howard's Pizza," was expressly excepted from the lease agreement. The lease agreement had a primary term of five years with an option to renew for five additional years. It

further provided for a rental rate of $275 per month, to be adjusted by any increase in taxes on the premises above the 1967 taxes. The leased premises, known as "The Pub," was operated as a bar by Brewer and Bahny. The lease agreement required that an assignment of the lease be subject to the written consent of the landlords. On April 24, 1968, one of the original tenants, Bahny, sold his one-half interest in "The Pub" to Bruce A. Kosena, the tenant involved here. As part of this agreement the tenant obtained a written assignment of lease from Bahny, as well as a written consent to assignment of lease from the landlords.

The tenant and Brewer continued to jointly operate "The Pub" until January 15, 1971, when Brewer sold his interest in "The Pub" to the tenant, and so the tenant became the sole proprietor and lessee. The written consent of the landlords was not obtained for this transaction. However, the tenant made the rent payments, and the landlords accepted the payments without objection. Sometime in 1972, that part of the building known as "Howard's Pizza" was taken over by the tenant and made a part of "The Pub." The tenant and landlords verbally agreed to make this additional area a part of the leased premises and to increase the rental to $500 per month. The tenant continued to operate "The Pub" without further problems until January 1974, when the building was substantially destroyed by fire. The lease agreement contained a fire clause, which stated in part:

> "AND PROVIDED, ALSO that in case the building on said demised premises, or any part thereof, shall during said term be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be unfit for use, then said rent or proportionate part

-3-

thereof shall be abated until said premises shall have been put in proper repair by the Lessors, or this lease shall have been determined, at their election."

After the fire, the tenant found other employment, and considered relocating his business. In June or July 1974, approximately six months after the fire, not having found a place to relocate, the tenant discussed with the landlords the possibility of restoring the original building. The landlords elected to restore the building, and the tenant verbally agreed to restore or reinstall the things necessary to operate his business. The repairs were completed, and the tenant reopened "The Pub" in November 1974. The parties had also verbally agreed that the rent remain at $500 per month in November and December 1974, but to be increased to $650 in January 1975. The tenant paid these amounts and the landlords accepted them as they became due. However, in early January 1975, the landlords advised tenant that, commencing in February 1975, the monthly rent would increase to $1,175. This started the dispute.

The tenant refused to pay the $1,175 and filed a mechanics' lien against the premises in the amount of $74,000, allegedly to recover the labor and materials he had expended in restoring the premises after the fire. In February 1975, the tenant tendered a check for $650 which was refused by the landlords, who still demanded $1,175 per month. The tenant then filed a lawsuit to determine the existence and terms of the lease and to also foreclose on the mechanics' lien. The tenant continued to pay $650 per month into court and he obtained a temporary restraining order to prevent his eviction.

Trial was held on February 16 and 17, 1978, and on

-4-

April 26, 1978, the trial court issued an order from which this appeal is taken.

Because one ruling depends on the other, we discuss the issues in the following order. First, the validity of the lease agreement; second, the legality of the landlords' demand increasing rent to $1,175 per month from $650; third, the award of interest to the landlords on each $650 payment the tenant has been voluntarily depositing in court since he filed the lawsuit; fourth, the validity of the mechanics' lien filed by the tenant; fifth, the award of $5,000 to the tenant as compensation for repairs; sixth and finally, the trial court's rulings on attorney fees.

VALIDITY OF LEASE AGREEMENT

The landlords contend that the trial court erred in not holding that the lease was terminated as a matter of law. This contention is based in part on section 70-1-607(4), MCA, which states in part: "When hiring terminates. The hiring of a thing terminates: . . . (4) by the destruction of the thing hired."

This statute provides, disjunctively, several ways by which hiring can terminate. However, the landlords urge that subsection (4) be applied exclusively to terminate the lease agreement. In Solich v. Hale (1967), 150 Mont. 358, 435 P.2d 883, interpreting the predecessor of section 70-1-607, MCA, this Court stated:

> "If it is found that the building is destroyed, by operation of law the lease would be terminated. Only an agreement to the contrary between the two parties could prevent the action of this statute [section 70-1-607, MCA]." 150 Mont. at 361-362. (Emphasis added.)

Here, the lease agreement _does_ contain an express agreement to the contrary which precludes the operation of section 70-1-607, MCA.

The landlords also contend that the original lease had been "so long abandoned, disregarded, and repudiated" that it was void and ineffective before the time of the fire. This contention is apparently based on the following allegations:

> (1) That the tenant failed to obtain the written consent to the assignment of lease from the landlords when the tenant bought out Brewer's one-half interest in "The Pub" on January 15, 1971.

> (2) That the parties, by verbally modifying the lease agreement, invalidated the entire lease.

> (3) Finally, that the tenant did not properly exercise his option to extend the lease term when the primary term expired in 1973.

These contentions are supported neither by the law nor by the facts. In their brief, counsel for the landlords fails to cite any legal authority to support the theory that the written consent of the landlords is an absolute prerequisite to a valid assignment of the lease. In fact, the great weight of authority is to the contrary. First, a restriction imposed in a lease agreement against an assignment of the lease is a restraint against alienation and is not looked upon with favor by the courts. Such restrictions are to be construed strictly against the lessor. Gazlay v. Williams (6th Cir. 1906), 147 F. 678, aff'd, 210 U.S. 41, 28 S.Ct. 687, 52 L.Ed. 950. Such terms must be given a limited effect. Here, the lease agreement, dated February 29, 1968, and signed by the predecessors of both the tenant and landlords, states as follows:

-6-

"The Lessees agree not to sublease or assign all or any part of the demised premises during the term of this lease without first obtaining the written consent of the Lessors thereto." (See page 5 of lease agreement.)

In April 1968, the predecessors of the landlords consented _in writing_ to Bahny's assignment of his interest in the lease to the tenant. The landlords' argument, however, centers on the later departure of the tenant's co-lessee, Brewer, on January 15, 1971, when the tenant took over the sole operation of the leased premises.

The tenant had no legal duty to obtain the landlords' written consent to his agreement with Brewer. The narrow interpretation demanded of such restrictions prohibits the application of the provision to a subsequent assignment. Lipsker v. Billings Boot Shop (1955), 129 Mont. 420, 288 P.2d 660. In _Lipsker_, this Court declared that, "The landlord's consent to the [original] assignment of a lease obviates the necessity of consent to subsequent assignments." 129 Mont. at 427.

The record also reveals that the landlords knew that the tenant had become the sole proprietor and lessee long before this dispute arose. And, the landlords continued to receive rental payments from the tenant for at least four years and never objected to the assignment. The landlords have long waived any right to assert breach of the restriction. Crossman v. Fontainbleau Hotel Corp. (5th Cir. 1959), 273 F.2d 720.

The landlords' counsel has also ignored section 28-2-1602, MCA, which expressly sanctions verbal modification of written contracts, including, of course, a written lease. Rodgers v. Saunders (1964), 144 Mont. 424, 396 P.2d

817. Here, the executed verbal agreements to increase the rental payments and to expand the leased premises, modified the lease agreement.

Finally, we hold that the tenant validly exercised his option to renew the lease when the original term expired in 1973. The agreement does not require that such an option must be exercised by written notice to the landlords. The option may be exercised verbally or even by conduct of the parties which exhibits a clear intent to exercise the option, Flint v. Mincoff (1960), 137 Mont. 549, 353 P.2d 340, a question of fact to be determined by all of the circumstances. Fun Products Distributors, Inc. v. Martens (Alaska 1977), 559 P.2d 1054. Here, the trial court correctly ruled that the tenant effectively exercised his option to renew. Considering the substantial amount of labor and materials provided by the tenant after the fire, all with the knowledge and consent of the landlords, it would be ludicrous to infer that the parties believed that the primary lease term had expired and that tenant had become only a month-to-month tenant. The tenant clearly demonstrated his intent to exercise the option.

We hold, therefore, that the original lease agreement of February 1968 was still valid and in effect at all times relevant to this case, until the expiration of the option term in 1978, subject to the verbal modifications made by the parties.

THE LANDLORDS' DEMAND FOR $1,175 PER MONTH RENTAL

Our decision declaring that the lease agreement was valid and effective disposes also the landlords' demand that

-8-

the rent be increased to $1,175 per month. The tenant at no time consented to raise the monthly rental beyond $650, and therefore the landlords had no right to increase the rent to $1,175 per month. The terms of the lease, as modified by the parties, had set the rental payments at $650 per month.

TRIAL COURT'S AWARD OF INTEREST

The trial court awarded the landlords interest on the rental payments "at the rate of 6 percent per annum from the due date of each payment as rent on the premises." Essentially, the trial court determined that interest should accrue as of the time that each rental payment became due. The record clearly shows that in February 1975, the landlords refused to accept the $650 monthly rent payment tendered by the tenant. The tenant then filed a lawsuit and tendered the $650 monthly payments into court. He had no other choice, as the landlords prevented him from paying his debt as it came due. Section 27-1-211, MCA, clearly releases the tenant from any obligation to pay interest:

> "27-1-211. Right to interest. Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt." (Emphasis added.)

Because the landlords were entitled to no more than $650 per month, it was their own refusal to accept the tendered payment, which resulted in the tenant filing a lawsuit and prevented them from receiving each payment as it became due. By any standards, the conduct of the landlords prevented the tenant from making the required payments. The

-9-

tenant should not be penalized for attempting to comply with the terms of the lease agreement, nor should the landlords be rewarded for unjustifiably refusing to accept the payments. The order allowing interest is reversed.

## THE VALIDITY OF PLAINTIFF'S MECHANICS' LIEN

Upon their election to repair, the landlords became bound under the lease agreement to make such repairs as necessary to provide the tenant with suitable premises to operate his business. The landlords willfully abrogated their duty under this contract when they refused to complete the repairs. This refusal compelled the tenant to complete the repairs himself, and he did so with the knowledge and consent of the landlords. These facts establish an implied contract between the parties. An implied contract is sufficient to support a valid mechanics' lien. M & R Const. Co. v. Shea (1979), ___ Mont. ___, 589 P.2d 138, 36 St.Rep. 37. (See also cases cited therein.) This Court has noted that a mechanics' lien ". . . is a creature of statute, remedial in nature, with its foundation in equity and natural justice, not contract." Beck v. Hanson (1978), ___ Mont. ___, 589 P.2d 141, 144. The equities were clearly in favor of the tenant.

The landlords willfully breached their promise to repair, and they were fully aware that the tenant was then compelled to complete the work. After the tenant had completed the repairs, the landlords then attempted, contrary to the terms of the lease, to drastically increase the rental payments. That can hardly be classified as fair dealing.

In denying the mechanics' lien, however, the trial court relied on a clause in the lease which required the tenant to "pay and discharge" any liens filed against the premises. That clause required the tenant:

"1. To pay and discharge promptly, all liens and obligations of any nature and kind whatsoever which may attach to or be imposed upon said premises, or to said leasehold, created or incurred by said Lessees, to pay all reasonable costs, attorney's fee and expenses that shall be made and occurred by the Lessors in enforcing the covenants of the agreements in this lease." (Emphasis added.)

The clear intent of this clause is to prohibit the tenant from having work done which would result in a lien filed against the premises, or to pay the liens if filed. But here it was the landlords who initiated the repairs. The landlords, by electing to repair the premises after the fire, "created or incurred" the obligation to complete such repairs. The tenant was compelled to do the work when the landlords failed to complete it after electing to repair the premises under the fire clause in the lease.

The trial court also noted several alleged technical defects in the mechanics' lien. Specifically, the trial court referred to the fact that the lien was filed by "Bruce A. Kosena" whereas this action was filed by "Bruce A. Kosena, d/b/a The Pub." This is an inconsequential technical discrepancy, and it will not invalidate an otherwise valid lien. The lien statute must be interpreted liberally to protect the right of the lien. Morrison-Maierle Inc. v. Selsco (1980), ___ Mont. ____, 606 P.2d 1085, 37 St.Rep. 299; Fausett v. Blanchard (1969), 154 Mont. 301, 463 P.2d 319. Furthermore, the fact that some of the items claimed in the lien may not be lienable does not invalidate

the entire lien. Smith v. Gunniss (1944), 115 Mont. 362, 144 P.2d 186; Caird Engineering Works v. Seven-Up Gold Mining Co. (1940), 111 Mont. 471, 111 P.2d 267.

The landlords' conduct throughout this transaction is inexcusable. Their willful breach of an obligation to repair the premises, and their ratification of the significant repairs made by the tenant, is alone a sufficient legal basis for the filing of a mechanics' lien. Further, their totally unjustified demand for drastically increased rental payments after the completion of the repairs presents an even stronger equitable basis to uphold the lien. The tenant is entitled to a mechanics' lien in the full amount of the value of any permanent repairs that were the duty of the landlords to provide.

TRIAL COURT AWARD OF $5,000 TO TENANT AS COMPENSATION FOR REPAIRS

The trial court ordered the landlords to pay a sum of $5,000 to compensate the tenant for repairs that he made to restore the premises after the fire. The trial court arrived at this figure in a mysterious way. The trial court listed items which were installed by the tenant and which were of benefit both to the tenant and the landlords. The court valued these items at $10,000, and then determined that the parties should "share equally" the cost of these items. But no basis exists in the record for the trial court's valuation of the items at $10,000, or for the determination that this cost should be shared equally by the parties. We reverse this part of the court's judgment and remand for further findings as to the exact value of the repairs for which the tenant may recover.

Absent an agreement to the contrary, the common law rule is that the lessor has no duty to repair. Solich, supra. Here there is an agreement to repair contained in the lease agreement, and when the landlords elected to repair and restore the premises, they became bound by this agreement to make the repairs necessary to restore the premises to a tenantable condition. The landlords failed to do this, and the tenant was compelled to complete the work. Under the agreement, the landlords are liable for the costs incurred by the tenant in completing the repairs that were the landlords' duty to provide.

## THE TENANT IS ENTITLED TO ATTORNEY FEES INCURRED IN ENFORCING THE LEASE AGREEMENT AND ATTORNEYS FEES FORECLOSING THE MECHANICS LIEN

In its original findings of fact and conclusions of law, the trial court held that (1) the tenant was entitled to attorney fees pursuant to section 93-8601.1, R.C.M. 1947, for enforcing the covenants of the lease, and (2) that the landlords were entitled, under section 93-8614, R.C.M. 1947 (now section 71-3-124, MCA), to recover reasonable costs of defending against the mechanics' lien pursuant to section 93-8614, R.C.M. 1947. But later, the trial court ordered that each party bear its own costs and attorney fees. We reverse this order.

The tenant is entitled to the reasonable costs of attorney fees incurred in establishing the validity of his lease. By demanding, unjustifiably, a drastically increased rental payment from the tenant and by taking legal action to force the tenant to quit the premises, the landlords refused to recognize the existence of the lease. The tenant was

forced to sue to determine the validity of the lease, and section 28-3-704, MCA, provides that the tenant is entitled to attorney fees so incurred.

Because the original lease agreement was entered into before the "effective date" (July 1, 1971) of section 28-3-704, MCA, counsel for the landlords contends that this statute does not apply here. Undoubtedly confusion exists as to the "effective date" provision. See Belgrade State Bank v. Swainson (1978), 176 Mont. 444, 578 P.2d 1166; Belgrade State Bank v. Swainson (1977), 172 Mont. 350, 564 P.2d 174. But we need not reconsider that issue here. The date of the agreement at issue is the date on which the lease agreement was renewed, March 3, 1973. The statute was then in effect. Because the landlords have asserted that the tenant did not properly exercise his option to renew the lease, the tenant was forced to sue to establish the validity of his option. Section 28-3-704, MCA, applies. We have previously rejected the landlords' argument that this statute does not apply to a party who started the lawsuit. Compton v. Alcorn (1976), 171 Mont. 230, 235, 557 P.2d 292.

Because we have ruled that the tenant had a valid mechanics' lien, the landlords are not entitled to attorney fees for defeating a mechanics' lien. Rather, the tenant is entitled to attorney fees for the costs incurred in establishing the validity of the mechanics' lien. See section 71-3-124, MCA.

The record does not establish the exact amount of attorney fees incurred by the tenant and therefore we must remand for further proceedings to establish the proper amount. The tenant is entitled to recover the reasonable

attorney fees incurred in establishing the validity of the lease and in foreclosing on his mechanics' lien. This includes also the attorney fees incurred in presenting this appeal.

The District Court judgment is affirmed in part, reversed in part, and remanded for further proceedings.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justice