No. 83-24

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

FALLON COUNTY, a political
subdivision of Montana,

Plaintiff and Respondent,

-vs-

HUGH BRINDLEY,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Fallon,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert L. Johnson, Lewistown, Montana

For Respondent:

Denzil R. Young, Baker, Montana

Submitted on Briefs: February 9, 1984

Decided: September 6, 1984

Filed: SEP    1984

*Ethel M. Harrison*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Sixteenth Judicial District of Fallon County, awarding $500 per month rental from November 17, 1979 until the County's scraper is returned. We vacate the judgment and remand the cause for further proceedings.

The issues presented on appeal are:

1. Did lessee's obligation to pay rent terminate when the scraper was rendered useless?

2. Did lessee's attempt to return the scraper terminate his rental obligation?

3. Did the District Court err in holding that the lessee was responsible for monthly rental payments until the scraper was returned to the County storage yard?

4. Was the lessor obligated to mitigate damages?

Hugh Brindley, an earth-moving contractor from Winnett, Montana, rented a Caterpillar Model 435 pull-type scraper from Fallon County on October 15, 1979. He signed a contract presented to him by the County and paid one month's rent of $500 in advance. The County's shop foreman watched Brindley load the scraper onto his truck to transport it from the County storage yard. Brindley winched the scraper's front wheels up and safety chained the scraper to his truck. He transported the scraper in this manner without incident to a worksite outside of Fallon County.

Brindley testified that he attempted to transport the scraper back to the Fallon County storage yard in Baker at the end of the prepaid, one-month period. He secured the scraper to his truck in the same manner in which he had left the storage yard. Approximately 24 miles from Baker, the scraper separated from the truck and sustained major

2

structural damage. Separated parts of the scraper came to rest in a pasture owned by Richard Reiger.

Unequipped to transport the separated scraper, Brindley helped Reiger repair the fence, returned to Winnett, and telephoned County Commissioner Gary Lang to report the accident. Commissioner Lang viewed the accident scene two days later. Neither Brindley nor the County made any effort to tow the scraper parts to Baker after the accident.

During months of negotiation following the accident, the County made no demand that Brindley pay additional rental or that he return the scraper to the County storage yard. The County refused Brindley's offer to buy and transport to Baker a used scraper of the same age and model, which he had discovered for sale in Idaho.

The October 15, 1979 rental agreement between Brindley and Fallon County provides in pertinent part:

> "Lessee shall pick up the scraper and upon termination of this contract, shall return it to Fallon County. Lessee shall not be responsible for major structural damage to the scraper unless it can be shown that this damage was occasioned by his abuse . . ."

The agreement is silent as to duty to repair, fitness for use or destruction of the thing hired.

On October 17, 1980, approximately one year after renting the scraper to Brindley, the County filed suit against Brindley claiming that "the scraper was wrecked and virtually destroyed, and has never been returned." The complaint further alleged that "the scraper, before its destruction, had a value in excess of $10,000." The County asked "for the value of the scraper and for the value of its use at $500.00 per month from and after November 15, 1979 . . ."

3

The case was tried before the court on April 21, 1982. The record contains no explanation as to why trial was scheduled more than a year after the last pleading was filed with the District Court. In the meantime, the scraper remained in Reiger's pasture.

The District Court found that Brindley paid $500 to the County before taking possession of the scraper on October 17, 1979; that the accident occurred in January, 1980; and that, as a result of the accident, the scraper sustained serious structural damage. The court concluded that the County had failed to prove the scraper was being transported in a negligent manner or that the defendant's method of transporting the scraper caused the accident. Having failed to prove that the damage to the scraper was "occasioned by his [the lessee's] abuse," the County was not entitled under its contract to recover for the damage to the scraper.

The court further concluded that defendant's obligation to pay a monthly rental of $500 continued until defendant returned the scraper to Fallon County's possession. The court awarded the County $500 per month rental from November 17, 1979 until the scraper is returned. The record contains no evidence that the scraper has ever been returned to the Fallon County storage yard. Appellant's counsel alleges that the County sold the scraper "as is" from Reiger's pasture after judgment was entered against Brindley.

The record includes testimony by Commissioner Lang that the estimated value of the scraper at the time of the accident was $8,000. We note the amount of past due rental awarded to the County at the time of the August 16, 1982 judgment was more than twice the estimated value of the scraper.

Hon. Fred J. Weber
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana 59620

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

October 4, 1984

Fallon County v. Brindley, No. 83-24, Sept. 6, 1984

Page 5, line 12 from bottom --- 150 Mont. at 261-62 should read 150 Mont. at 361-62.

RIGHT

361

(41 St.Rep. at 1720)

WEST PUBLISHING COMPANY
Box 43526
St. Paul, MN 55164

While the parties have raised several issues on appeal, we consolidate the first three issues into one question: Did the lease terminate on the date of the accident? We find this issue to be determinative. We need not address the issue of mitigation at this time.

Section 70-1-607(4), MCA provides: "When hiring terminates. The hiring of a thing terminates . . . by the destruction of the thing hired." This section and its predecessor apply to all things hired. In American Machine Company v. Johnson (1971), 157 Mont. 226, 483 P.2d 921, we held that section 42-109, R.C.M. 1947 controlled termination of the lease of a "skidder" machine. In Solich v. Hale (1967), 150 Mont. 358, 435 P.2d 883, the statute controlled termination of a lease of premises in a building.

Absent a contractual provision to the contrary, the lease terminates by law upon the destruction of the thing hired. Only express agreement to the contrary can preclude operation of the statute. Kosena v. Eck (1981), 195 Mont. 12, 18, 635 P.2d 1287, 1290-91, citing Solich, 150 Mont. at 361-62, 435 P.2d at 885. No such agreement exists in this case.

In Solich, supra, the only factual issue presented, other than damages, was whether a building that had been partially gutted by fire was repairable or destroyed. Lessor argued that the building was destroyed and plaintiff's lease terminated by operation of law. This Court set forth two tests for determining whether section 42-109, R.C.M. 1947 (the predecessor to section 70-1-607, MCA) applied.

The first test, which the Court labeled an "untenability" test, is essentially a test for fitness for use:

5

"Under this test the thing hired is considered destroyed: 'When destruction of the demised premises is of such a nature that it cannot be used for the purposes for which it was rented and cannot be restored to a fit condition by ordinary repairs, made without unreasonable interruption of the lessee's use.' Presbyterian Distribution Services v. Chicago National Bank, 28 Ill.App.2d 147, 171 N.E.2d 86, 90." Solich, 150 Mont. at 362, 435 P.2d at 885.

Under the second test, the Court considered the thing destroyed "if the cost of restoration . . . as it was immediately before the fire is more than one-half of the value of the property at the time of the fire." Solich, 150 Mont. at 362, 435 P.2d at 885.

The Court held that under both tests the evidence lead to the conclusion that the building was destroyed. The Court observed that "parts of respondent's business were located in both buildings. A destruction of even the 'so-called' north building would be sufficient to terminate the lease under the statute involved." Solich, 150 Mont. at 364, 435 P.2d at 886. Under both the fitness-for-use and cost-of-repairs tests, "destruction" can mean less than complete obliteration.

The record here indicates that the scraper's fitness for use ceased when it separated from Brindley's truck and "sustained serious structural damage." The County's complaint alleged that the "scraper was wrecked and virtually destroyed" by the accident. Commissioner Lang testified that the scraper was not fit for use, but that he had not investigated the cost of repairs. The record is silent as to the salvage value of the scraper, the cost of repairs, or how long it might take to return the scraper to fitness for use.

The District Court failed to issue findings of fact on the fair market value of the scraper before the accident and the cost, time and feasibility of repairs to restore the

scraper to fitness for use after the accident. Absent such findings, this Court cannot rule on whether the scraper was destroyed on the date of the accident and whether the lease terminated by operation of law.

We vacate the judgment of the District Court and remand for appropriate findings and such proceedings as are necessary.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7