Donald L. HURLBURT, Plaintiff and Appellant,

v.

John A. GULLO and Rosetta Foote, Defendants and Respondents.

No. 860181–CA.

Court of Appeals of Utah.

Feb. 24, 1988.

Philip C. Patterson (argued), Patterson and Patterson, Ogden, for plaintiff and appellant.

Neil R. Sabin (argued), Douglas K. Pehrson, Nielsen & Senior, Salt Lake City, for defendants and respondents.

Before BENCH, DAVIDSON and JACKSON, JJ.

## OPINION

BENCH, Judge:

Plaintiff appeals from an order of summary judgment entered against him in his action for damages resulting from breach of a lease. We reverse the summary judgment and remand for further proceedings.

Defendant Rosetta Foote and her husband Donald owned an approximately five acre parcel of property, together with two and one-half shares of irrigation water, in Slaterville, Utah. Their home and a garden occupied about one and one-half acres while the remaining three and one-half acres, separated by a fence and ditch, were used for farming.

In early April 1983, plaintiff Donald Hurlburt met with the Footes to negotiate his lease of the three and one-half acre parcel to be used for hay production. Hurlburt, at the Footes' request, prepared the following handwritten lease agreement which Hurlburt and Mr. Foote both signed:

April 18, 1983

Don Foote agrees to lease approx. 5 acres with water, located at 1805 W. 400 N., Slaterville, to Don Hurlburt for $150.00 per year. Don Hurlburt has the option to extend lease for an additional five years at the same terms. I agree to pay Don Foote $75.00 down with a balance of $75.00 due at time of harvest for the first year.

Hurlburt farmed the land in the spring of 1983 and paid $75.00 in the spring and $75.00 in the fall. He orally notified the Footes in early 1984 of his election to exercise the five year option, and proceeded to work the land. Hurlburt paid the first $75.00 in the spring of 1984. Mr. Foote died in May 1984. Shortly thereafter, Hurlburt paid Mrs. Foote the second $75.00 for 1984.

In December 1984, defendant John Gullo approached Mrs. Foote with a written offer to purchase the entire five acre parcel. At that time, Mrs. Foote made no mention of Hurlburt's lease. Gullo again met with Mrs. Foote in April 1985 with a second written offer to purchase the five acres. Mrs. Foote then informed Gullo of Hurl-

burt's lease. Gullo informed Mrs. Foote he would either honor the lease or make appropriate restitution.

Later that month, Hurlburt tendered his first 1985 payment, but Mrs. Foote did not accept it and told Hurlburt of the pending sale negotiations with Gullo. Subsequent attempts by both Hurlburt and Gullo to meet and discuss the situation proved fruitless. Hurlburt again met with Mrs. Foote who told him she had committed to sell the property. Hurlburt met with the loan officer handling the closing and presented a copy of the lease. He was assured Mrs. Foote would be advised not to negotiate any sale proceeds until the status of the lease had been resolved.

The sale of the Foote property was closed on May 2, 1985. The Hurlburt lease was not mentioned at the closing. Subsequently, Gullo informed Hurlburt by letter that he was assuming exclusive possession of the property. He thereafter moved horses onto the three and one-half acre parcel. Hurlburt filed this action seeking damages resulting from breach of the lease.

Defendants filed a motion to dismiss or, in the alternative, for summary judgment. They argued 1) the lease was too ambiguous and unspecific to be enforceable; 2) no meeting of the minds ever occurred; 3) no recording was made giving actual or constructive notice; and 4) no probable damages existed. After a hearing on January 15, 1986, the trial court granted defendants' motion and held:

My interpretation of the contract is that it is a lease for one year with an option to renew for five years. Generally the law would be that to exercise an option for a five year lease, that would have to be done in writing or it would be a violation of the Statute of Frauds.... I think the statute of frauds applies. I don't think the option was exercised in writing, and I don't think it is enforcible [sic].

On appeal, Hurlburt argues the trial court erred as a matter of law in holding his oral notice violated the statute of frauds.

Utah Code Ann. § 25-5-3 (1984) states:

Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing.

However, as a general rule, an oral notice of election to exercise an option to renew a written lease for a period longer than one year does not violate the statute of frauds. *See Gruber v. Castleberry,* 23 Ariz.App. 322, 533 P.2d 82 (1975); *Daehler v. Oggoian,* 72 Ill.App.3d 360, 28 Ill.Dec. 250, 390 N.E.2d 417 (1979); *Prince Enters., Inc. v. Griffith Oil Co., Inc.,* 8 Kan.App.2d 644, 664 P.2d 877 (1983); *Kosena v. Eck,* 195 Mont. 12, 635 P.2d 1287 (1981), and cases cited therein. The reasoning behind the rule is "that the terms and conditions of the contract are embodied in the lease, which is in writing, and the only effect of notice is to make the original lease operative for the renewal period." *Gruber,* 533 P.2d at 83. The operation of the rule presupposes the existence of a valid, enforceable lease. The nature of the lease was argued by both parties at the hearing on defendants' motion, and is again argued on appeal, but the trial court did not specifically address this issue. The validity and enforceability of the lease, therefore, remains a viable issue properly to be determined at the trial level.

We conclude the trial court erred, as a matter of law, in granting summary judgment for defendants. The trial court's order is vacated, and the matter is remanded for further proceedings consistent with this opinion.

DAVIDSON and JACKSON, JJ., concur.