No. 83-390

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

CHARLES E. LINDBERG, et al.,

        Plaintiffs and Appellants,

   -vs-

LEATHAM BROTHERS, INC., a
Utah Corporation and THE
STATE OF MONTANA,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Whalen & Whalen; Timothy J. Whalen argued, Billings,
Montana

    For Respondents:

        McNamer, Thompson & Cashmore; William R. McNamer argued,
Billings, Montana
Allen B. Chronister, Asst. Attorney General argued,
Helena, Montana

---

                Submitted:    October 31, 1984

                  Decided:    January 4, 1985

Filed:   JAN 4 - 1985

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is a wrongful death and survivorship case brought by plaintiffs against the above-named defendants in the District Court, Thirteenth Judicial District, Yellowstone County. A jury returned a verdict for the defendants and judgment was entered thereon; plaintiffs appeal and we affirm.

This action arises from a car-truck accident on June 30, 1980, at approximately 10:50 p.m., in which a head-on collision occurred between the car driven by Patricia A. Lindberg and a trailer truck driven by David Toland of Leatham Brothers, Inc. (Leatham). The Lindberg vehicle was traveling north on U.S. Highway 87 and the Leatham truck was traveling south at the time the vehicles met on the Pass Creek Bridge south of Wyola, Montana. Mrs. Lindberg was killed in the collision.

The existing road conditions were described by Janet Elwell who was driving behind the Lindberg vehicle prior to the collision. Rain had diminished to a light sprinkle. The road was shiny and reflective, reducing visibility. Centerlines and side stripes were poorly marked on the road making it difficult to see the two-lane highway. The road surface was rough. The zebra-striped reflective bridge marker was missing on the corner where the Lindberg car approached the Pass Creek Bridge.

The driver of the truck, Toland, testified to the circumstances immediately preceding the fatal accident. The headlights of the Lindberg car were raised from low beam to high beam at approximately 150 yards from his truck. Toland

- 2 -

turned the truck lights on bright and back to dim to indicate the truck's lights were set on low beam. Toland testified that the Lindberg vehicle swerved into his lane, immediately before impact.

There is conflicting testimony regarding the point of impact and the position of either vehicle. Testimony of the investigating patrolman, Officer Lee Graves, indicated the Lindberg car crossed the centerline and drove into the Leatham truck. Appellants' expert witness, F. Denman Lee, a physicist, reconstructed the accident and presented testimony that the collision occurred in the northbound lane.

Dr. Tranel, a clinical psychologist from Billings, Montana, testified as to the visual and perceptual field available to the decedent just before the collision. Dr. Tranel opined that perceptual distortion immediately prior to the accident triggered an irrational or panic response by Mrs. Lindberg causing her to swerve her car to correct the visual aberration, thus proximately causing her death. The court refused to hear Dr. Tranel's testimony as to what caused perceptual distortion.

Appellants contend that defense counsel's lack of cooperation during discovery stage caused undue delay which denied appellants a fair trial. Guaranty National Insurance Co. insured both Leatham and Patricia A. Lindberg. Separate counsel was hired by Guaranty National to represent each insured when Leatham filed a counterclaim seeking damages against Lindberg. When Patricia Lindberg's present counsel attempted to discover facts from Guaranty National, her insurer, counsel for Lindberg hired by Guaranty National did not release information from its investigation file until respondent Leatham had determined its position. Driver

Toland's log book was never provided, even though highway patrolman Lee Graves said he either gave it to the truck driver or put it back in the truck after he finished reviewing it. Photographs taken on behalf of the decedent, and in the possession of insurance adjuster Sid Griffin, were made available to the appellants only after extended delay.

Appellants raise these issues on appeal:

(1) Did the District Court commit error in excluding the expert testimony of Dr. Tranel regarding the causes of perceptual distortion encountered by Patricia A. Lindberg immediately before her death?

(2) Did an abuse of the discovery process by respondent Leatham and Guaranty National Insurance Company prejudice appellants' discovery of relevant facts and evidence prior to trial and deny appellants a fair trial?

(3) Did the District Court err in excluding from evidence appellants' offered exhibit nos. 133, 134, 137 and 138?

(4) Did the District Court commit error in excluding exhibit nos. 117, 118, 119, 120, 121 and 122 from the jury room during deliberations, even though the exhibits were received into evidence at the time of trial?

(5) Did the District Court err in excluding from evidence appellants' offered exhibit nos. 160 and 161, when the defendant, State of Montana, had admitted the genuineness of the exhibits and a foundation had been laid to introduce the exhibits into evidence?

(6) Did the District Court err in excluding appellants' offered exhibit no. 123, though the exhibit had been used by their accident reconstruction expert witness and truck driver Toland admitted his signature was on the document?

- 4 -

(7) Did the District Court commit error when it disallowed testimony from defendant and witness Toland as to whether U.S. Department of Transportion Regulation No. 391-21(10) had been complied with in hiring truck driver Toland, and in refusing to allow the jury to hear evidence with regard to the integrity of driver Toland both as a person and a professional truck driver?

(8) Did the District Court commit error when it refused to allow testimony from Charles E. Lindberg, a truck driver with 23 years experience, as to appropriate use of lights under the circumstances that prevailed when the Leatham vehicle collided with the Lindberg vehicle?

(9) Did the District Court err in excluding from evidence appellants' exhibit nos. 149 through 152, photographs of the roadway where the accident occurred, taken by Charles E. Lindberg's son a few months after the accident?

(10) Did the District Court err in excluding exhibit nos. 154 and 155, photographs depicting Patricia A. Lindberg, deceased, and the appellant Paul Gerard Teaford, neither of whom were able to be present at the time of trial?

(11) Did the District Court commit error by allowing Jack Leatham, part owner of Leatham Brothers to submit testimony regarding an inspection of the condition of the headlights on the Leatham truck in January 1980?

(12) Did the District Court unfairly prejudice appellants' case by revealing bias against appellants' expert witnesses and by commenting upon the evidence offered by appellants, implying the judge's opinion as to the weight such evidence merited?

(13) Did the District Court commit reversible error by refusing to give appellants' offered instruction no. 11?

(14) Did the District Court commit error in giving instruction no. 19, the State of Montana's offered instruction no. 16?

(15) Did the District Court commit error in granting the respondents' joint motion for a directed verdict against appellants on the claim for damages under what has heretofore been known as a survival cause of action?

(16) Did the District Court commit error by not allowing the jury to take an evening recess before deliberating and considering their verdict and thus deny appellants a fair trial?

We note that appellants presented two separate theories of liability in this case. The first theory imposes liability on the State of Montana for failing to keep Highway 37 in proper repair and for negligently allowing unsafe conditions to exist at the time of the accident. These unsafe conditions included a bumpy and narrow roadway, poorly marked centerline and sideline, and no zebra-striped warning marker attached to the Pass Creek bridge. Appellants argue that these conditions alone or coupled with the improper light-dimming sequence of the driver, Toland, caused a perceptual distortion which in turn caused an irrational panic response. The manifestation of this irrational panic response experienced by Mrs. Lindberg was her swerving into the wrong lane and into the path of the Leatham truck.

The second theory advanced by appellants is that the accident occurred in the northbound lane where the Lindberg vehicle was properly proceeding. The Leatham truck negligently crossed the centerline of the highway and collided with the Lindberg vehicle.

Respondents' theory is that the Lindberg vehicle swerved across the centerline into the southbound lane and collided with the truck.

I.  DID THE DISTRICT COURT COMMIT ERROR IN EXCLUDING THE TESTIMONY OF DR. TRANEL REGARDING THE CAUSES OF PERCEPTUAL DISTORTION ENCOUNTERED BY PATRICIA A. LINDBERG IMMEDIATELY BEFORE HER DEATH?

This issue presents the question of the scope of expert testimony and the trial court's role in regulating it.  Art. VII, M.R.Evid., deals with opinion and expert testimony. Rule 702, provides:

> "If <u>scientific, technical</u>, or <u>other specialized knowledge will assist the trier of fact to understand the evidence</u> or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."  (Emphasis added.)

The facts of each case and the substance of the expert testimony offered must be considered on a case-by-case basis by the trial court to determine if the testimony falls within the rule.  The proposed opinions offered by Dr. Tranel sought to establish that the perception of Mrs. Lindberg was so distorted because of the conditions created by defendants that a collison was very likely.  The conditions caused the distortion and the distortion caused the accident.  Dr. Tranel was going to supply the element of causation to appellants' case.

Appellants rely heavily on State v. Chapple (Ariz. 1983), 660 P.2d 1208, for the proposition that it is an abuse of discretion for the trial judge to exclude expert testimony that could possibly aid the jury in understanding a fact in issue.

Appellants seek to broaden the law set forth in Chapple. The Arizona Supreme Court generally adhered to the criteria set forth in United States v. Amaral (9th cir. 1973), 488 F.2d 1148. Amaral and Chapple set forth factors we believe are useful in determining the admissibility of expert testimony. The Amaral factors are: (1) qualified expert; (2) proper subject; (3) conformity to generally accepted explanatory theory; and (4) probative value compared to prejudicial effect.

The testimony offered in Chapple regarded the factors involved in assessing the reliability of the eyewitness testimony. No opinion was rendered regarding the ultimate credibility of specific witnesses. Chapple, 660 P.2d at 1222. Dr. Tranel was allowed to testify to factors involving perceptional distortion. He was not allowed to testify to how these factors affected Mrs. Lindberg's mental processes even as the expert in Chapple could not testify that the existence of an identification factor made a particular witnesses perception or memory faulty. Chapple was also limited to its facts on this issue. Chapple, 660 P.2d at 1224.

We hold the trial court acted within its discretion in limiting the testimony of Dr. Tranel.

II.   DID AN ABUSE OF DISCOVERY PROCESS BY RESPONDENT LEATHAM AND GUARANTY NATIONAL INSURANCE COMPANY PREJUDICE APPELLANTS' DISCOVERY OF RELEVANT FACTS AND EVIDENCE PRIOR TO TRIAL AND DENY APPELLANTS A FAIR TRIAL?

Appellants argue that discovery abuses prevented them from obtaining a fair trial. In Massaro v. Dunham (1979), 184 Mont. 400, 603 P.2d 249, we discussed discovery abuse. That case involved a divorce action where various attempts to

discover information concerning child support payments and to require production of documents related thereto were ignored by opposing counsel. We set forth some general propositions that govern:

> "The District Court has the inherent discretionary power to control discovery. That power is based on the District Court's authority to control trial administration. See, State v. Mecca Twin Theater & Film Exchange, Inc. (1973), 82 Wash.2d 87, 507 P.2d 1165, 1167. In controlling discovery, the District Court must regulate traffic to insure a fair trial to all concerned, neither according one party an unfair advantage nor placing the other party at a disadvantage. State v. Boehme (1967), 71 Wash.2d 621, 430 P.2d 527, 534.

> "We will reverse the District Court only when its judgment may materially affect the substantial rights of the appellant and allow the possibility of a miscarriage of justice. Wolfe v. Northern Pacific Railway Co. (1966), 147 Mont. 29, 41, 409 P.2d 528, 534. We find such a situation here.

> "The purpose of discovery is to promote the ascertainment of truth and the ultimate disposition of the lawsuit in accordance therewith. Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation. Hickman v. Taylor (1947), 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451, 460." 180 Mont. at 404, 405, 603 P.2d at 251, 252.

Appellants complain that certain accident reports prepared by Guaranty on behalf of Leatham were not produced. The reports were prepared in anticipation of litigation. The District Court ruled that appellants did not demonstrate a substantial need for the investigative reports to require production pursuant to Rule 26(b), M.R.Civ.P. The appellants offer no substantive reasons why the reports in question should have been turned over to them; they only complain that respondents never applied for a protective order. The District Court properly denied relief to Lindberg.

This ruling was made on September 1, 1982, 8 1/2 months before trial commenced. Appellants' presentation at trial was not prejudiced by this delay.

Appellants claim they were prejudiced by the fact that they were denied certain photos taken by insurance adjuster, Sid Griffin before the April 6, 1984 deposition of expert, Dr. F. Denham Lee. Appellants do not move at trial to limit inquiry or exclude the use of Dr. Lee's first deposition for impeachment. Appellants does not identify these crucial photos by exhibit number here on appeal nor point out how they were crucial to Dr. Lee's change in position. Dr. Lee testified he did a lot more work after his initial deposition. He viewed 80 additional photos before changing his position. He had an opportunity to explain his change from the swerve theory to the theory that the Leatham truck crossed the centerline. Even if the seven so-called Sid Griffin photos were wrongfully withheld from appellants their omission does not amount to reversible error.

III. WHETHER THE DISTRICT COURT ERRED IN EXCLUDING FROM EVIDENCE APPELLANTS' OFFERED EXHIBIT NOS. 133, 134, 137, 138.

The exhibits are photographs measuring approximately 2 1/2 inches square taken by the county coroner. Each one depicts a separate piece of decedent's body lying on the road after the collision. Respondents contend the trial court properly excluded the photographs because due to their gruesome nature they were inflammatory and hence their probative value was outweighed by their prejudicial effect.

Appellants contend the photographs showed a path of debris that allowed Dr. Lee to reconstruct the accident. The photographs supported and lent credibility to Dr. Lee's analysis and tended to disparage Patrolman Grave's version.

- 10 -

The law regarding photographs is easy to state but sometimes difficult to apply. If the trial court determines the probative value outweighs the prejudical effect, the photographs should be admitted. State v. Hoffman (Mont. 1982), 639 P.2d 507, 309 St.Rep. 29; State v. O'Donnell (1972), 159 Mont. 138, 496 P.2d 299.

Given the gruesome nature of the photographs, their quality and size, the lack of background detail, and wealth of other photographs and information available to Dr. Lee the trial court did not abuse its discretion by excluding this evidence.

IV. DID THE DISTRICT COURT COMMIT ERROR IN EXCLUDING EXHIBIT NOS. 117, 118, 119, 120, 121, AND 122 FROM THE JURY ROOM DURING DELIBERATION?

The above-mentioned exhibits, a map and models which aided Dr. Lee in explaining his theory, were admitted into evidence. It was stipulated that the evidence is demonstrative in nature. Appellants argue that this evidence was intended to go to the jury room during deliberation from the time it was admitted.

Respondents urge that no objection to the admission of this evidence was made on the condition that it would not go to the jury room. The trial court did not affirmatively rule on whether these exhibits could be used by the jury during deliberations.

The jury had the opportunity to view the evidence. The exclusion from the jury room of these exhibits did not materially prejudice the appellants' case.

V. DID THE DISTRICT COURT ERR IN EXCLUDING FROM EVIDENCE LINDBERG'S OFFERED EXHIBIT NOS. 160 AND 161, WHERE THE DEFENDANT, HIGHWAY DEPARTMENT, HAD ADMITTED THE

GENUINESS OF THE EXHIBITS AND FOUNDATION HAD BEEN LAID TO INTRODUCE THE EXHIBITS INTO EVIDENCE?

Exhibit nos. 160 and 161 are internal Highway Department memoranda that contain evaluations of specific stretches of road within the state. The memoranda include an evaluation of the segment of road where this collision occurred. These documents were drafted to assist the Montana Highway Department in planning and budgeting road repair, improvement and replacement. Exhibit no. 161 shows a computer print-out that summarizes road conditions over a 5.3 mile stretch of road which includes the collision site.

Don Opitz, a state employee, testifying at trial explained the documents and laid a foundation for their admission. The District Court excluded exhibit nos. 160 and 161 after lengthy discussion in chambers with counsel.

The State contends the excluded exhibits were irrelevant, confusing, prejudicial and erroneous. Appellants contend the exhibits tend to prove the condition of the roadway which contributed to the accident.

Rules 401, 402 and 403, M.R.Evid., provide the general framework in which this issue must be resolved. These rules state:

> "Rule 401. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant."

> "Rule 402. All relevant evidence is admissible, except as otherwise provided by constitution, statute, these rules, or other rules applicable in the courts of this state. Evidence which is not relevant is not admissible."

> "Rule 403. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

These exhibits are relevant. They tend to show the general condition of the highway which was a material issue in the appellants' case against the State of Montana. The argument of the Highway Department that the printouts were too prejudicial or confusing is without merit. The Highway Department was afforded ample opportunity to present the factual evidence explaining the reports to the jury in cross-examination of state employee Opitz and in final argument. The view that the jury would be misled and would not take into account the photographs of the road and other evidence or be able to sort out the different theories of the case is very paternalistic and shows a lack of confidence in the intelligence and common sense of the average juror.

The trial court erred by not admitting this evidence. However, given all of the evidence admitted concerning the road conditions, the error did not materially prejudice appellants' case and is harmless.

VI. DID THE DISTRICT COURT ERR IN EXCLUDING LINDBERG'S OFFERED EXHIBIT NO. 123, EVEN THOUGH THE EXHIBIT HAD BEEN USED BY THEIR ACCIDENT RECONSTRUCTION EXPERT WITNESS AND TRUCK DRIVER TOLAND ADMITTED HIS SIGNATURE APPEARED ON THE DOCUMENT?

Exhibit no. 123 is a receipt or bill of lading which was signed by driver Toland when he picked up his load before he left Seeley Lake. Appellants argue the document should have been admitted because it was used to impeach driver Toland. Appellants also assert that the credibility of Dr. Lee was damaged by respondent's counsel's assertion that exhibit no. 123 contained unreliable hearsay.

Driver Toland was confronted with exhibit no. 123. He admitted signing it. Appellants' counsel offered the document into evidence. The trial court did not admit it. At the time exhibit no. 123 was rejected, Toland had not yet made the prior inconsistent statement referred to in appellants' brief. In fact, the inconsistency was elicited by respondent's counsel. Appellants made no further effort to use exhibit no. 123 to impeach Toland or attempt to have it admitted as evidence. We find no error.

VII. DID THE DISTRICT COURT COMMIT REVERSIBLE ERROR WHEN IT DISALLOWED THE TESTIMONY FROM WITNESSES LEATHAM AND TOLAND AS TO WHETHER U.S. DEPARTMENT OF TRANSPORTATION REGULATION NO. 391-21(10), HAD BEEN COMPLIED WITH IN HIRING TOLAND AND IN REFUSING TO ALLOW THE JURY TO HEAR EVIDENCE WITH REGARD TO THE INTEGRITY OF DRIVER TOLAND BOTH AS A PERSON AND A PROFESSIONAL TRUCK DRIVER?

The U.S. Department of Transportation Regulation No. 391-21, requires that the employer submit information concerning employees who drive tractor-trailer rigs on the highways. The information is basically the same as required on most job applications. The information contained in this form shows that Toland had been fired from a bus-driving job for being late for work.

This evidence is relevant only to prove a character trait of driver Toland, to-wit: He is an irresponsible employee. Character evidence of this nature is specifically proscribed. See Rule 404, M.R.Evid.

This evidence has no bearing on truth or veracity. It does not tend to prove Toland is untruthful. See Rule 608, M.R.Evid.

Appellants misconstrue what is meant by putting ones character into issue. Rule 404(a)(1), M.R.Evid., incorporates the time-honored practice of allowing the accused in a criminal case to introduce evidence of his good character. The prosecution may then rebut the same. The rule has no application in civil cases unless the character trait is an essential element of the charge, claim, or defense. A character trait of tardiness is not an essential element of an action alleging negligent driving.

VIII. DID THE DISTRICT COURT COMMIT REVERSIBLE ERROR WHEN IT REFUSED TO ALLOW TESTIMONY FROM CHARLES E. LINDBERG, A TRUCK DRIVER OF 23 YEARS EXPERIENCE, ON THE APPROPRIATE USE OF LIGHTS UNDER THE CIRCUMSTANCES THAT PREVAILED WHEN THE TRUCKING COMPANY VEHICLE COLLIDED WITH THE LINDBERG VEHICLE?

Appellants argue that the testimony of the decedent's husband, and appellant, should have been allowed because it would assist the trier of fact in understanding the customs and accepted driving practices of over-the-road tractor/trailer drivers. Respondents argue that Lindberg was not qualified, facts not in evidence were assumed, and that the subject matter was within common knowledge of the jury.

The trial court must exclude expert testimony if the subject is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness, but if the matter is sufficiently beyond common experience that the opinion of the expert would assist the trier of fact the court must admit the evidence. State v. Howard (1981), 195 Mont. 400, 404, 405, 637 P.2d 15, 17. We defer to the discretion of the trial court in finding no error here.

IX.  DID THE DISTRICT COURT ERR IN EXCLUDING EVIDENCE OF LINDBERGS' EXHIBIT NOS. 149 THROUGH 152, WHICH ARE PHOTOGRAPHS OF THE ROADWAY WHERE THE ACCIDENT OCCURRED, TAKEN BY CHARLES E. LINDBERG'S SON A FEW MONTHS AFTER THE ACCIDENT?

The photos depict the roadway and the scraggy remains of a bush off the side of the road.  The bush photographed bears no resemblance to the way it looked in full bloom on June 30, 1980.  The photograph does not tend to prove, disprove, or support any material fact in the case.  It only tends to prove the location of a bush.  The bush is depicted in other admissible photos.  The evidence is irrelevant and repetitive and its exclusion was properly within the discretion of the trial court.

X.  DID THE DISTRICT COURT ERR IN EXCLUDING EXHIBIT NOS. 154 and 155, PHOTOGRAPHS DEPICTING PATRICIA A. LINDBERG, DECEASED, AND AN APPELLANT, PAUL GERARD TEAFORD, NEITHER OF WHOM WERE ABLE TO BE PRESENT AT THE TIME OF TRIAL?

One exhibit shows a happy and healthy Patricia Lindberg with her son and the other shows her with her class of Wyoming school children.  The photos were offered to prove Mrs. Lindberg was in good health.  The photo of decedent and her son was taken in 1976 and the class picture in 1973.

The discretion of the District Court again is the reason we find no basis to this claim of error.  The District Court, as we have said many times, has broad discretion in the matter of admitting relevant evidence.

XI.  DID THE DISTRICT COURT COMMIT REVERSIBLE ERROR BY ALLOWING JACK LEATHAM, PART OWNER OF LEATHAM TO SUBMIT TESTIMONY REGARDING AN INSPECTION OF THE CONDITION OF THE HEADLIGHTS OF THE LEATHAM TRUCK IN JANUARY 1980?

- 16 -

Appellants claim the testimony of Jack Leatham should have been stricken because the matters testified to were not within his personal knowledge and the testimony was hearsay. Leatham testified that the truck involved in the collison was inspected and this inspection included the head lights.

Leatham had no personal knowledge that the headlights on this particular truck were inspected. His testimony was based on hearsay. By definition, "hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to <u>prove</u> <u>the</u> <u>truth</u> <u>of</u> <u>the</u> <u>matter</u> <u>asserted</u>." Rule 801(c), M.R.Evid.

Hearsay is inadmissible except as otherwise provided by statute, the Montana Rules of Evidence, or other rules applicable in the courts of this state. Rule 802, M.R.Evid.

Leatham did not acquire his knowledge that the truck was inspected from personal observation but from a document in the company records. An out-of-court statement, the document, was made and repeated in court by Leatham to prove the truth of the matter asserted, to-wit: that an inspection of the lights were made in January 1980.

Leatham attempted to introduce this document to prove his testimony but the matter was dropped when the evidence was admitted. This document was itself hearsay but could have been admitted under the "records of regularly conducted activity" exception to the hearsay rule, Rule 803(6), M.R.Evid., if a proper foundation were laid. Since appellant did not pursue their objection and acquiesced to the admission of Leatham's testimony, we find no reversible error.

XII. DID THE DISTRICT COURT UNFAIRLY PREJUDICE LINDBERG'S CASE BY REVEALING TO THE JURY ITS BIAS AGAINST

LINDBERG'S EXPERT WITNESSES AND BY COMMENTING UPON THE EVIDENCE OFFERED BY LINDBERG IMPLYING ITS OPINION AS TO THE WEIGHT SUCH EVIDENCE MERITED?

Appellants contend that the trial court prejudiced the jury by its comments to appellants' expert witnesses and comments on the evidence. After reviewing the instances cited by appellants in their brief and looking at the record as a whole, we find no showing of bias that could be imputed to the District Court.

XIII. DID THE DISTRICT COURT COMMIT REVERSIBLE ERROR BY REFUSING TO GIVE LINDBERG'S OFFERED INSTRUCTION NO. 11?

Appellants' offered instruction nos. 10 and 11 quoted federal and state laws which concern the dimming of headlights at night on the highway. The court gave instruction no. 10 but refused to give instruction no. 11. Both instructions are related and are set forth:

> "[Instruction no. 10.] Federal Motor Carrier Safety Regulations as prescribed by U. S. Department of Transportation, Federal Highway Administration; Section 392.23, provides:
>
> "'Sec. 329.32 Upper and lower head-lamp beams. During the time when lighted lamps are required, every driver shall obey the following:
>
> "(a) Upper beam. He shall use the upper distribution of light when there is no oncoming vehicle within 500 feet: Provided, however, that a lower distribution of light may be used when fog, dust, or other atmospheric conditions make it desirable for reasons of safety, and when within the confines of municipalities where there is sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead;
>
> "(b) Lower beam. When within 500 feet of an on-coming vehicle, he shall use a distribution of light or composite beam so aimed that the glaring rays are not projected into the eyes of the on-coming driver and such distribution of light shall also be used when following another vehicle within 500 feet.'
>
> "If you find David Toland, the driver of the Leatham Brothers', Inc. truck violated the above

section at or about the time of the happening of the accident in this case, then such violation may be considered by you in determining whether or not there was negligence upon the part of the defendant, Leatham Brothers, Inc., a Utah corporation."

"[Instruction no. 11.] Section 61-9-221(1), MCA, provides:

"'61-9-221. Use of multiple beam road lighting equipment. Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in 61-9-201, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicles, subject to the following requirements and limitations:

"(1) Whenever the driver of a vehicle approaches an oncoming vehicle within 1,000 feet, such driver shall use a distribution of light or composite beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver. The lowermost distribution of light specified in 61-9-220(2) shall be deemed to avoid glare at all times, regardless of road contour and loading.'

"The times specified in Sec. 61-9-201, as applicable to this case, is at any time from one-half hour after sunset to one-half hour before sunrise.

"Section 61-9-220(2), Montana Code Annotated, provides:

"'(2) There shall be a lowermost distribution of light, or composite beam, so aimed and of sufficient intensity to reveal persons and vehicles at a distance of at least 100 feet ahead; and on a straight level of road under any condition of loading none of the high-intensity portion of the beam shall be directed to strike the eyes of any approaching driver.'

"If you find from the evidence in this case that David Toland, the driver of the Leatham Brothers, Inc. truck, operated the truck in violation of the sections above quoted of the Montana Code, you are instructed that such conduct was negligence as a matter of law.

"However, in this action, a violation of law is of no consequence unless it was a proximate cause of the death of Patricia A. Lindberg." (Emphasis added.)

The trial court refused to give instruction no. 11 because it referred only to driver Toland.

Appellants point out that the proposed instruction mentions that violation of the statute must be a proximate cause of Mrs. Lindberg's death. They argue that it was not prejudicial to Leatham because Leatham never raised the contention that the lights on Mrs. Lindberg's car blinded Toland and that this in some way contributed to the collision.

These points are well taken but considering the fact that the court gave appellants' instruction no. 10, we find no reversible error. Instruction no. 10 is a fair statement of the law. It sets forth the duty of driver Toland with regard to dimming his lights. This instruction differs from instruction no. 11 in that it states a violation of the regulation may be considered in determining negligence where violation of the Montana statute is declared negligence as a matter of law by the language of instruction no. 11. It would have been preferable for the District Court to instruct on the Montana statutes as they pertain to the use of high and low beams of headlights at night. However, the instruction given is sufficiently consonant with the statutes that the jury could not have been misled. Therefore we find no error here.

XIV.  WHETHER THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN GIVING INSTRUCTION NO. 19, STATE OF MONTANA'S OFFERED INSTRUCTION NO. 16?

Instruction no. 19 given by the court is quoted in part from the language of section 61-8-321, MCA, and reads as follows:

> "You are instructed that Montana law requires as follows: 'Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway.'

"If you find from the evidence that a party to this action conducted his or herself in violation of the law just read to you, you are instructed that such conduct was negligence as a matter of law.

"However, in this action, a violation of law is of no consequence unless it was a proximate cause of an injury."

Appellants object to the instruction because section 61-8-321, MCA, was not set forth in its entirety and hence appellant was prejudiced. The remaining portions of the statute not quoted in the instruction are irrelevant.

Section 61-8-321, MCA, in unabridged form states:

"(1)    Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

"(a)    when overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

"(b)    when the right half of a roadway is closed to traffic while under construction or repair;

"(c)    upon a roadway divided into three marked lanes for traffic under the rules applicable thereon; or

"(d)    upon a roadway designated and signposted for one-way traffic.

"(2)    Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway."

Appellants complain that giving instruction no. 19 had the effect of exonerating the State of Montana by making Lindberg or Leatham negligent per se. An instruction on comparative fault was given. The jury was not instructed to disregard any negligence on the part of the State of Montana, only that both parties involved in the collision must drive

on the right side of the road. The court did not err in giving this instruction.

XV. DID THE COURT COMMIT REVERSIBLE ERROR IN GRANTING THE RESPONDENTS' JOINT MOTION FOR DIRECTED VERDICT AGAINST APPELLANTS ON THE CLAIM FOR DAMAGES UNDER WHAT HAS HERETOFORE BEEN KNOWN AS A SURVIVAL CAUSE OF ACTION?

This issue involves the damages allowable in a survival action. The appellants apparently ask this Court to reexamine the doctrine that a decedent must live "an appreciable amount of time" in order for a survival action to accrue. See Stephens v. Brown (1972), 160 Mont. 453, 457, 503 P.2d 667, 670; Dillon v. Great Northern Ry. Co. (1909), 38 Mont. 485, 496, 100 P. 960, 963; Smith, Thoughts on Survival Action in Montana and Related Matters, 41 Mont.L.Rev. 165 (1980).

Since the jury found that respondents were not liable and we affirm their verdict, the above issue is moot and left for another day.

XVI. DID THE DISTRICT COURT COMMIT ERROR BY NOT ALLOWING THE JURY TO TAKE A RECESS BEFORE DELIBERATING AND CONSIDERING THEIR VERDICT AND THUS DENY APPELLANTS A FAIR TRIAL?

Appellants cannot be heard here on appeal to complain about a tired jury being sent to deliberate when they did not object at trial.

The trial court should consider the hour and condition of the jurors before sending them to deliberate. It is the duty of the trial court acting within its sound discretion not to allow the jury to begin deliberations under conditions that would prejudice either party. No objection was raised

at trial, and we have no grounds to find inherent prejudice to the appellants.

Affirmed.

_____
                    Justice
               John C. Sheehy

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 23 -