No. 89-614

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

MELANIE VESTRE and DAVID V. KNOLL,

　　　　Plaintiffs and Appellants,

-vs-

PAUL LAMBERT, DONALD C. BARRINGER, NORMA L. BARRINGER, DEAN CONAWAY
and CENTURY 21 PREFERRED PROPERTIES, INC.,

　　　　Defendants and Respondents,

DAVID V. KNOLL,

　　　　Plaintiff and Appellant,

-vs-

STANLEY W. PINE,

　　　　Defendant and Respondent.

APPEAL FROM:　District Court of the Eleventh Judicial District,
　　　　　　　　In and for the County of Flathead,
　　　　　　　　The Honorable Leif B. Erickson, Judge presiding.


COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Lane K. Bennett, Attorney at Law, Kalispell,
　　　　　　Montana.

　　　　For Respondent:

FILED

AUG 20 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA
Filed:

Stephen C. Berg; Warden, Christiansen, Johnson &
Berg, Kalispell, Montana; M. Dean Jellison,
Attorney at Law, Kalispell, Montana.

Submitted on Briefs: June 18, 1991

Decided: August 20, 1991

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The District Court for the Eleventh Judicial District, Flathead County, consolidated two lawsuits and a jury trial was held. Plaintiffs, Melanie Vestre and David Knoll, sought damages for fraud, negligent misrepresentation, negligent construction, and breach of warranty against Century 21, Paul Lambert, Dean Conaway and Donald and Norma Barringer, d/b/a, Barringer Construction. Judgment was entered in favor of the Barringers and they are not parties to this appeal. The jury found that defendants Lambert and Conaway had negligently misrepresented material facts and awarded plaintiffs $10,000. The jury found in favor of Lambert, Conaway and Century 21 in all other respects. Plaintiff Knoll also brought an action against Stanley Pine to recover on a promissory note. Pine counterclaimed and sought damages for misrepresentation. The jury found Knoll violated a duty owed to Pine and awarded Pine $40,000. Plaintiffs appeal. We reverse and remand.

We will address the following issues:

1.    Did the District Court err in allowing Pine to testify as an expert witness?

2.    Did the District Court err in allowing defense counsel to testify and argue the case?

3.    Did the District Court err in allowing Pine's testimony on his community activities and involvement?

Plaintiffs, Melanie Vestre (Vestre) and David Knoll (Knoll), lived in their home located on Flathead Lake near Kalispell, Montana ("the Lake home"). Plaintiffs contacted Dean Conaway

2

(Conaway), a real estate agent employed by Century 21 Preferred Properties, Inc. (Century 21), regarding the purchase of real estate investment property. Plaintiffs informed Conaway that they were looking for undeveloped property on which to build improvements and rental units. Plaintiffs informed Century 21, Paul Lambert (Lambert), President of Century 21, and Conaway that they wanted an investment that would be profitable and beneficial for taxation purposes also.

Conaway, Lambert and Century 21 referred plaintiffs to townhouses in the Buffalo Head Addition Number 92, located in Kalispell, Montana, then being built and constructed by Donald and Norma Barringer, d/b/a Barringer Construction (Barringers). Century 21, Lambert and Conaway informed plaintiffs that Barringers were finishing one four-plex unit which would be available for sale to them and had two townhouses in a finished unit for sale immediately.

Century 21, Lambert, Conaway and Barringers all suggested that the parties involve Stanley Pine (Pine), developer of the Buffalo Head Addition No. 92, in a complex three-way property exchange. The parties exchanged various appraisals. Subsequently, on May 6, 1985, plaintiffs, Barringers and Pine entered into an exchange agreement whereby various properties, cash, notes, and equity were transferred among them.

As part of the exchange, plaintiffs transferred their Lake home property to Pine and received a total of six townhouses (the "original units") from Pine and Barringers. Barringers were the

3

developers, builders, and contractors on these six original units. Plaintiffs also received from Barringers two vacant building lots in the development, and committed to building a four-plex unit on each lot. Plaintiffs did eventually construct one four-plex unit on one lot, known as the "Blue Units". Pine executed a promissory note in the amount of $20,521.

During the negotiation process, prior to the closing of the exchange agreement, plaintiffs became aware of the fact that six townhouse units in the same subdivision constructed by Barringers, which adjoined two of their potential townhouse units, were involved in a dispute between the purchaser, Dr. Douglas Wood (Wood), and the defendants -- Barringers, Century 21 and Lambert. Wood filed a lawsuit demanding rescission.

Certain problems were bothering the tenants of the units purchased by plaintiffs, and high utility bills were experienced during this period by the tenants. Defendants advised plaintiffs that the units were considered to be energy efficient and that an approximate heating cost of $110 per month was likely. These problems, among many others, apparently started a chain reaction of problems culminating in defaults and foreclosures involving all parties. This lawsuit resulted.

Plaintiffs maintained that Century 21, Lambert, and Conaway breached their duty to fully disclose as contained in § 37-51-321, MCA; and misrepresented the value and marketability of the units, amounting to misrepresentation, negligence and constructive fraud. Knoll also filed a default action against Pine alleging that Pine

4

failed to pay the promissory note when due. Pine counterclaimed.

The District Court granted Knoll summary judgment on the promissory note but found that Pine's counterclaim alleged material misrepresentations in conjunction with the real estate transaction which formed the basis for the promissory note. Thus, the counterclaims were consolidated with the Century 21 case.

The jury returned a special verdict finding:

1.   Plaintiffs violated a duty owed to Pine and Pine was damaged in the amount of $40,000.

**NEGLIGENCE CLAIMS:**

2.   Barringers were not negligent.

3.   Century 21, Lambert and Conaway were negligent but such negligence was not a legal cause of damages to the plaintiffs.

4.   Plaintiffs were negligent and such negligence was a legal cause of damage to them.

5.   Negligence was allocated as follows:

(a)   Negligence of Century 21, Lambert, Conaway and
      Barringers:                                       60%

(b)   Negligence of Plaintiffs:                         40%

6.   The total damages sustained by plaintiffs as a result of the negligence of Century 21, Lambert, Conaway and Barringer was zero.

**NEGLIGENT MISREPRESENTATION CLAIMS:**

7.   Lambert and Conaway negligently misrepresented material facts to the plaintiffs. Barringers did not.

8.   The negligently misrepresented material facts were a legal cause of damage to the plaintiffs.

5

9. The total damages sustained by plaintiffs as a result of the negligent misrepresentation was $10,000.

**FRAUD CLAIMS:**

10. Defendants did not defraud plaintiffs.

11. The total damages sustained by plaintiffs as a result of the fraud of Century 21 and Lambert was zero.

**EXPRESS WARRANTY (Original Units):**

12. Barringers did not breach an express warranty in favor of the plaintiffs regarding the original units.

Subsequently, the District Court entered judgment on the verdicts and ordered that plaintiffs have judgment against Century 21, Lambert and Conaway in the amount of $10,000. The District Court further ordered that Barringers have judgment against plaintiffs and were entitled to their costs and disbursements. As to Pine, the District Court ordered that the total amount due on the note was on offset to the $40,000 judgment plus costs for Pine, leaving Knoll a balance due to Pine of $10,647 plus costs. Plaintiffs appeal.

I

Did the District Court err in allowing Pine to testify as an expert witness?

At trial, defendants called Pine to testify in their case-in-chief. Plaintiffs maintained that Pine was qualified as an expert and testified as such over plaintiff's objection. Plaintiffs had notice that Pine would be called as a witness, but not as an _expert_ witness. Plaintiffs maintain that Pine's

testimony as an expert witness was unfair surprise because they had no opportunity to prepare for cross-examination of an expert, and no opportunity to prepare an expert of their own for rebuttal.

Defendants Century 21, Lambert and Conaway acknowledge that Pine was not identified in the pre-trial order as an expert witness. However, they deny that Pine was called as an expert witness, but instead that he "expressed an opinion as a layman and central participant in the subject exchange". We disagree.

Relevant portions of Pine's testimony are set out below:

### Direct Examination

BY [DEFENSE COUNSEL]:

 Q. Would you please state your name and your address?

 A. Stan Pine, . . .

 Q. Stan, would you give the Jurors an idea of your post-high school education and professional training?

 A. I graduated with a Bachelor's Degree in accounting at Kent State University.

 Q. In what year?

 A. In 1967. And then I proceeded to go to work for Arthur Anderson and Company. They are a large CPA firm in their Denver office. And I worked for them for a few years. I opened up my own CPA practice in a smaller town in Colorado and ran and managed that practice for about six years. Then I moved up here.

 Q. In what year?

 A. In 1976.

 Q. Are you a licensed Certified Public Accountant?

 A. I am, in the State of Colorado. I have never changed my certificate to Montana.

 Q. So have you practiced in Montana as a CPA?

A.   I have worked for Larry Simpson, who is a CPA here.   And if you don't transfer your certificate, you have to work underneath somebody else.   So I have done some work for him.

Q.   Stan, at my request have you reviewed the Plaintiffs' Exhibit 30 which I am holding in my hands?

A.   I have.

Q.   To the extent it can be reviewed?

A.   Yes.   I have not had time to go through item by item on some of the littler checks.   But I have looked at the major items.

.   .   .

Following this questioning, defense counsel was allowed to put the

original Exhibit 30 on the jury box and hand out copies of it to

the Jurors.   The questioning continued.

[PLAINTIFFS' COUNSEL]:   Your Honor, after the qualification statement, I would again like to make my objection.

THE COURT:   The objection is duly noted and overruled.

[DEFENSE COUNSEL]:   Your Honor, I would like the court to be aware that Stanley Pine has at all times been listed as a witness whom we would call in this trial. [Plaintiffs' Counsel] is correct, not in an expert capacity, and he will not be testifying in that capacity.

Q.   Stan, having reviewed Exhibit 30, and at my request and with the input of not only me, but the town folks I am representing there and your own attorney, did you have occasion to have prepared a document which might aid you in your analysis of Exhibit 30?

A.   It is a long, roundabout way of saying I prepared a document.   Yes.

.   .   .

Q.   What is it entitled?

A.   "Knoll transaction per Exhibit 30."

8

Q. Would you identify, please Exhibit J, and tell me if Exhibit J is not an identical copy of what you just referred to?

A. It is.

. . .

[DEFENSE COUNSEL]: Your Honor, I have provided a copy of Exhibit J to counsel. I would like to offer it in evidence.

[PLAINTIFFS' COUNSEL]: We object on the same basis we have been doing; it is an expert. (sic).

Following that exchange, defense counsel was allowed to give copies of Exhibit J to the Jurors. Pine then testified at length and in detail regarding the information and calculations provided by Exhibit J and compared it to the calculations of Melanie Vestre. Plaintiffs' counsel again objected arguing that Pine was commenting completely on the evidence. The Court again overruled the objection and allowed the testimony as rebuttal to Melanie Vestre's calculations.

Admissibility of evidence is within the sound discretion of the District Court and will not be reversed absent an abuse of discretion. Morning Star Enters., Inc. v. R.H. Grover, Inc. (Mont. 1991), 805 P.2d 553, 556, 48 St.Rep. 112, 113; Massman v. City of Helena (1989), 237 Mont. 234, 240, 773 P.2d 1206, 1210.

Pine was not deposed by either party in this case. He was not listed as an expert witness pursuant to Rule 26(e)(1) and (2), M.R.Civ.P. He did testify in plaintiffs' case-in-chief on direct examination for the limited purpose of "showing the last of the agreements in the exchange", but he was not cross-examined by defendants. Plaintiffs did not have their own expert to testify

9

on this matter.

We conclude that Pine was unquestionably qualified by defendants as an expert and testified as such. This amounted to unfair surprise to the plaintiffs. We conclude that the District Court abused its discretion in allowing Pine to testify as an expert witness.

We hold that the District Court erred in allowing Pine to testify as an expert witness. We reverse on this issue.

II

Did the District Court err in allowing defense counsel to testify and argue the case?

At trial, plaintiffs called Daniel W. Hileman (Hileman), the attorney who had represented Wood in his litigation concerning his townhouses, to testify. Hileman was listed as a witness in the pre-trial order. He testified that prior to the May 6, 1985, closing date of the exchange transaction he had advised counsel for defendants -- Century 21, Lambert and Conaway, that Wood was not making his payments, and would not make his payments. Counsel for defendants then offered himself as a surrebuttal witness to this testimony. Plaintiffs objected but the objection was overruled.

On appeal, plaintiffs maintain that allowing defense counsel's testimony was error and in violation of Rule 3.7, Rules of Professional Conduct, because the testimony did not relate to an uncontested issue or the nature or value of legal services. Plaintiffs urge that defendants could have discovered the nature of Hileman's testimony through normal discovery procedures but

10

failed to do so. Defendants maintain that since Hileman was not deposed, the nature of his testimony was not clear until he actually testified. Defendants further allege that no other witness could have testified to the nature of defense counsel's communications with Hileman.

Rule 3.7 provides (in part):

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue.

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

We agree with plaintiffs that defense counsel's testimony in this case was improper. Hileman was listed as a witness in the pre-trial order. Defendants had every opportunity to depose him but did not. No interrogatories were addressed to his testimony. The fact that they did not use the discovery available to them does not justify allowing defense counsel's testimony to veil their shortcomings. Rule 3.7 clearly does not allow a lawyer to testify under these circumstances.

We hold that the District Court erred in allowing defense counsel to testify and conduct the trial of the case. We reverse on this issue.

III

Did the District Court err in allowing Pine's testimony on his

11

community activities and involvement?

We will consider this issue for the assistance of the District Court and parties on retrial. During trial, on direct examination, Pine testified as follows:

[BY DEFENSE COUNSEL]:

Q. You were previously sworn and gave your name, address and occupation and your educational experience. Could you tell us a little bit about your community involvement and what you do in this community, how long you have been here and the like?

A. We moved here--

[PLAINTIFFS' COUNSEL]: Objection, relevance.

[THE COURT]: Overruled. You may answer.

[THE WITNESS]: We moved here in 1976, and I have been involved in, I think, as was stated the first day I testified, some in-town and some other business involvements. And as far as community involvement, I have been on the Cayuse Prairie School Board, which is a little school out where we live. I am presently on the Hospital Board, Kalispell Regional Hospital Board, and Northwest Hospice Care, which oversees the hospital and Health Promotion Center, and a couple of other things.

I am on the Youth for Christ Board, and was one of the founders on that. Various such boards and other things like that.

[DEFENSE COUNSEL]:

Q. When did you first become involved with Buffalo Head Subdivision?

On appeal, plaintiffs' maintain that the District Court erred in allowing this testimony on community activities. They maintain that such testimony was irrelevant to any issue involved at trial and that Pine's character and reputation were not at issue. Plaintiffs urge that evidence of character is not admissible in a

12

trial unless the character of the witness is at issue. Rule 404, M.R.Evid.

Pine contends that it is always proper to establish a witness' background and to place him in his setting by asking what he is doing and what he has done for a living.

Rule 404(c), M.R.Evid., provides:

> Character in issue. Evidence of a person's character or a trait of his character is admissible in cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense.

In Lindberg v. Leatham Bros. Inc. (1985), 215 Mont. 11, 693 P.2d 1234, this Court addressed a similar question. Lindberg was a wrongful death and survivorship action which arose from a fatal car-truck collision between a car driven by Patricia Lindberg and a trailer truck driven by David Toland of Leatham Brothers, Inc. At trial, plaintiffs attempted to introduce evidence that Mr. Toland had been fired from a bus-driving job for being late to work.

In affirming the District Court's decision disallowing the introduction of such evidence this Court stated:

> This evidence is relevant only to prove a character trait of driver Toland, to-wit: He is an irresponsible employee. Character evidence of this nature is specifically proscribed. See Rule 404, M.R.Evid.
> . . .
> Appellants misconstrue what is meant by putting one's character into issue. Rule 404(a)(1), M.R.Evid., incorporates the time-honored practice of allowing the accused in a criminal case to introduce evidence of his good character. The prosecution may then rebut the same. The rule has no application in civil cases unless the character trait is an essential element of the charge, claim, or defense. A character trait of tardiness is not an essential element of an action alleging negligent driving.

13

Lindberg, 693 P.2d at 1242. Such is the case here. Pine's community involvement is not an essential element of an action to recover under any of the theories presented in this case: misrepresentation, recovery on a promissory note, fraud, negligent misrepresentation, negligent construction or breach of warranty.

We conclude that the District Court erred in allowing Pine's testimony on his community activities, and that such testimony should not be presented on retrial.

We find it unnecessary to address the remaining issues. We note the contradiction in the "negligence" section of the jury verdict form where the jury found negligence on the part of defendants and yet concluded the total damages to be zero. This should be considered on re-trial.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

14