DA 06-0106

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 182

WILLIAM C. WEIMAR,

      Plaintiff and Appellant,

    v.

MIKE LYONS, individually and doing business as LYONS
CONCRETE, LYONS CONCRETE, INC., a dissolved
corporation, DOES 1 THROUGH 10,

      Defendants and Respondents.

_____

MIKE LYONS, individually and d/b/a LYONS CONCRETE, INC.,

      Counterclaimant and Respondent,

    v.

WILLIAM C. WEIMAR,

      Counterclaim Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 03-191
Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wilmer E. Windham, Attorney at Law, Polson, Montana

      For Respondent:

          Matthew H. O'Neill, Attorney at Law, Polson, Montana

Submitted on Briefs:  December 13, 2006
Decided:  August 1, 2007

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Plaintiff William C. Weimar (Weimar) and Defendant Mike Lyons, individually and d/b/a Lyons Concrete, Inc. (individually and collectively "Lyons," as appropriate), entered into an agreement under which Lyons would construct certain concrete works on Weimar's property. Disputes over payment arose, leading to Lyons' filing of a construction lien on Weimar's property and this action by Weimar to expunge the lien. Weimar appeals from the findings of fact, conclusions of law and judgment entered by the Twentieth Judicial District, Lake County, granting Lyons judgment against Weimar in the amount of $16,763, plus interest at 1.5 percent per month from August 18, 2003, until paid, plus reasonable costs and attorney fees as determined by the District Court. We affirm in part and reverse in part.

¶2    We restate the issues on appeal as follows:

¶3    (1)  Did the District Court abuse its discretion by going beyond the pretrial order to hear evidence on the nature of the parties' agreement?

¶4    (2) Was there sufficient evidence to support the District Court's findings and conclusions that there had been a written fixed price contract followed by a series of binding oral agreements, its determination of the amount owed thereunder, and that Weimar had waived deficiencies in the work by his actions?

¶5    (3) Did the District Court err by awarding Weimar only $8,967.19 for the costs of repair or replacement work done by Clark-Salsbury Contracting, Inc.?

¶6    (4) Did the District Court err in allowing Mike Lyons to offer expert testimony concerning the quality of the work?

2

¶7     (5) Did the District Court err by concluding that Lyons had standing to file his construction lien and counterclaim?

¶8     (6) Did the District Court err in granting Lyons interest at 1.5 percent per month under § 28-2-2104(1), MCA?

¶9     (7) Is Weimar entitled to his costs and attorney fees as the prevailing party?

## BACKGROUND

¶10     The parties entered an agreement whereby Lyons would provide concrete work on Weimar's property.[1]  The nature of this agreement was disputed.  Lyons asserts that the parties entered into a series of agreements, beginning with a May 1, 2003, written contract to perform work for $19,810, followed by verbal understandings to perform certain additional concrete and related work on a time and material basis.  Weimar alleges the parties agreed to a single, time and material-based contract.

¶11     After the project began, Lyons invoiced Weimar for $14,389, which he asserted at trial represented a portion of the work under the written contract and some of the additional work orally agreed to.  Weimar paid that sum.  Thereafter, Lyons completed the project and invoiced Weimar for that work in the amount of $25,731.  Weimar did not make payment on that invoice and instead claimed that the $14,389 he earlier paid was sufficient to cover Lyons' work.

---

[1]Although owned by Weimar at the time of the events giving rise to this dispute, Weimar Investments Limited Partnership was, at the time of the trial, the owner of the subject real property in Lake County, Montana, to-wit: the S½SW¼SW¼ of Section 32, Township 24 North, Range 21 West, P.M.M., Lake County, Montana, Reference Certificate of Survey No. 3034.

¶12 Lyons, as "Mike Lyons d/b/a Lyons Concrete, Inc.," filed a construction lien against Weimar's property, claiming the sum of $26,031. In response, Weimar instituted an action to expunge the lien and sought damages resulting from its filing, to which counterclaims reasserting the construction claim were filed by Mike Lyons, individually and d/b/a Lyons Concrete, Inc. Weimar responded by filing a motion to dismiss Lyons' counterclaim and to expunge the lien on the principal ground that the lien claimant had no standing to maintain an action under § 30-13-215, MCA, because Lyons Concrete, Inc., a Montana corporation, had been involuntarily dissolved by the Montana Secretary of State on December 2, 1996, pursuant to § 35-6-104, MCA, for failure to file the first annual corporate report. New articles of incorporation for Lyons Concrete, Inc., were filed by Lyons and approved by the Secretary of State on November 7, 2003. The court denied the motion to dismiss and to expunge the lien on February 11, 2004, and also held, in an order entered pursuant to Lyons' motion for partial summary judgment, that any and all relief that may be granted to Weimar pursuant to his complaint would be enforceable against the Defendants Mike Lyons, individually, Mike Lyons d/b/a Lyons Concrete, and/or Lyons Concrete, Inc., whether it be the original, the dissolved corporation, or the newly-formed corporation. The court reciprocally held that "[a]ny and all relief sought by [Lyons] pursuant to his counterclaim shall be enforceable by the same entities set forth above against [Weimar]."

¶13 On September 10, 2004, Weimar filed a motion for change of venue on the grounds that there was a sign advertising the business of Lyons Concrete on the courthouse lawn, which indicated that an impartial trial could not be had. The District

4

Court denied this motion. On October 27, 2005, Lyons filed a motion in limine to exclude expert witnesses for Weimar's failure to answer interrogatories, which sought the identity of experts and the substance of their testimony. The motion also sought exclusion of evidence in support of Weimar's defense to Lyons' claim under § 28-2-2104, MCA, for interest on residential construction contracts exceeding $400,000 "at the rate of 1.5% a month or a pro rata fraction of that amount on the unpaid balance." Section 28-2-2104(1), MCA. The District Court denied Lyons' request to exclude Weimar's witnesses, but forbade Weimar from contesting the applicability of § 28-2-2101 et seq., MCA, to this contract, both as a discovery sanction and upon Weimar's admission that the total cost of construction work on Weimar's property performed by all contractors, not just Lyons, was over $400,000.

¶14 A bench trial was held on November 17, 2005. The District Court found the parties had entered into a written contract for identified work in the sum of $19,810, followed by "a series of binding oral agreements" for additional work and extras. The court further found that while some of the work performed by Lyons was not done in a workmanlike manner, Weimar had waived many of the deficiencies in Lyons' work by accepting the work, causing the deficiencies by direct order, contributing to the deficiencies by insisting on hasty performance, and contributing to the deficiencies by performing improper preparation work incorporated into the final product. Moreover, the court found that in "Weimar's rush to complete the project prior to the appraisal date, he repeatedly advised his subcontractors to disregard [Lyons'] potential defects with the admonition to do the best they can by the appraisal date, 'even if we have to pull it out

5

and fix it later.'"  The court did, however, credit Weimar with the sum of $8,967.19 for the costs of work by Clark-Salsbury to repair that portion of Lyons' deficient work that had not been caused by Weimar or his employees or had otherwise been waived.  As a result, the District Court entered judgment against Plaintiff Weimar and Weimar Investments Limited Partnership in the principal amount of $16,763, plus interest at 1.5 percent per month from August 18, 2003, until paid, plus reasonable costs and attorney fees to be determined by the District Court.

¶15    On December 16, 2005, Lyons filed an affidavit of attorney fees and costs totaling $24,442.50.  Although not objecting to this amount, Weimar nonetheless asserted that he was the true prevailing party and, as such, was entitled to costs and attorney fees.  He further filed a motion to alter or amend judgment on various grounds.  The District Court denied Weimar's motion and, on February 1, 2006, entered an order awarding Lyons costs of $190 and attorney fees of $25,980.50 in addition to the amounts awarded under the contract claims.  Weimar appeals.

## STANDARD OF REVIEW

¶16    This Court applies a clearly erroneous standard using a three-part test to review a district court's findings of fact:

> First, we review the record to determine if the findings are supported by substantial evidence; second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of the evidence; and third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still conclude that a finding is clearly erroneous when a review of the record leaves the Court with the definite and firm conviction that a mistake has been made. *Fiedler v. Fiedler* (1994), 266 Mont. 133, 137-38, 879 P.2d 675, 678 (citations omitted).

6

*James Talcott Const. v. P & D*, 2006 MT 188, ¶ 26, 333 Mont. 107, ¶ 26, 141 P.3d 1200, ¶ 26. Our standard of review for conclusions of law is whether the district court correctly interpreted the applicable law. *Talcott*, ¶ 26. A court's ruling on the admissibility of evidence, which includes a witness's testimony, is subject to an abuse of discretion standard and we will not overturn a court's ruling absent a showing of an abuse of discretion. *Miranti v. Orms*, 253 Mont. 231, 833 P.2d 164 (1992).

¶17 We apply the abuse of discretion standard to our review of an award of damages. *Graveley Simmental Ranch Co. v. Quigley*, 2003 MT 34, ¶ 21, 314 Mont. 226, ¶ 21, 65 P.3d 225, ¶ 21. However, "[a] district court's award of prejudgment interest is a question of law; therefore, this Court determines whether the district court correctly applied the law." *Talcott*, ¶ 28 (citing *American Music Co. v. Higbee,* 2004 MT 349, ¶ 13, 324 Mont. 348, ¶ 13, 103 P.3d 518, ¶ 13) (citation omitted).

### DISCUSSION

***¶18 (1) Did the District Court abuse its discretion by going beyond the pretrial order to hear evidence on the nature of the parties' agreement?***

¶19 Weimar argues that the District Court violated the well established principle that a court may not consider issues outside the pleadings. Weimar contends the complaint alleged and Lyons' answer admitted that the original contract was partially written and partially verbal, and was based on "time and material," but not to exceed $19,810. Weimar further contends that there was nothing in the pre-trial order to the contrary, and that the District Court thus erred by allowing Lyons to introduce evidence regarding the nature of the parties' agreement.

7

¶20    The pretrial order governs "the subsequent course of the action unless modified by a subsequent order." M. R. Civ. P. 16(e). "The purpose of pretrial orders is to simplify issues, prevent surprise and allow counsel to prepare their cases for trial based on the pretrial order." *Travelers Indem. Co. v. Andersen*, 1999 MT 201, ¶ 34, 295 Mont. 438, ¶ 34, 983 P.2d 999, ¶ 34 (citing *State ex rel. Ins. Fund v. Berg*, 279 Mont. 161, 180, 927 P.2d 975, 986 (1996)). "A legal theory or factual issue for trial must be 'at least implicitly included in the pretrial order;' however, pretrial orders should be liberally construed to permit any issues at trial that are 'embraced within [their] language.'" *Point Service Corp. v. Myers*, 2005 MT 322, ¶ 19, 329 Mont. 502, ¶ 19, 125 P.3d 1107, ¶ 19 (quoting *Plath v. Schonrock,* 2003 MT 21, ¶ 55, 314 Mont. 101, ¶ 55, 64 P.3d 984, ¶ 55) (citations omitted).

¶21    While the pre-trial order stated as an agreed fact that "Plaintiff and Defendant Mike Lyons made a verbal agreement for certain concrete and related work on a time and material basis," it also recognized the parties' differing allegations regarding the nature of the agreement. In opposition to Weimar's assertions, Lyons contended that:

> On or about May 1, 2003, Plaintiff and Defendant Lyons Concrete, Inc. entered into a written contract under the terms of which said Defendant agreed to install certain concrete work on Plaintiff's property for the sum of $19,810.
>
> . . . .
>
> Lyons Concrete, Inc. entered into a series of contracts, both written and oral, with Plaintiff to provide concrete work on Plaintiff's property. The contracts at issue here are the May 1, 2003 written contract to perform certain work for $19,810 followed by a verbal contract to do additional work on a time and materials basis.

8

¶22     We conclude that the pre-trial order adequately set forth the parties' conflicting views about their agreements and that the District Court did not abuse its discretion by hearing evidence on the nature of the agreements.

¶23     *(2)  Was there sufficient evidence to support the District Court's findings and conclusions that there had been a written fixed price contract followed by a series of binding oral agreements, its determination of the amount owed thereunder, and that Weimar had waived deficiencies in the work by his actions?*

¶24     The District Court entered findings of fact as follows:

> 3. That Lyons Concrete, Inc. entered into a series of contracts, both written   and oral, with Plaintiff to provide concrete work on Plaintiff's property.  The contracts at issue here are the May 1, 2003 written contract to perform certain work for $19,810 followed by a verbal contract for additional work and extras.
>
> 4. That Lyons invoiced Weimar $14,389 [invoice #7424] for a portion of the work on the written contract and additional work performed under an oral agreement.
>
> 5.  That Weimar paid invoice #7424 in the amount of $14,389 in full.
>
> 6. That thereafter, Lyons completed performance of the written contract and several additional items under oral agreements and invoiced Weimar for that work at invoice #8056 on July 17, 2003 in the amount of $25,731.
>
> . . . .
>
> 16. That Weimar did not testify nor introduce any evidence refuting Lyons' claim to a written contract for a fixed price of $19,810.

In a conclusion of law, the court concluded that there was a written contract to perform the identified work for the sum of $19,810, as well as a series of binding oral agreements for additional concrete work totaling $20,310.

¶25     Weimar argues there was insufficient evidence to support the court's findings of a fixed price contract and maintains the parties' actual conduct is inconsistent with that idea, as the testimony demonstrated that Weimar's employees did some of the forming

9

work—since Lyons was unable to do it—without Lyons offering any credit back for the work. Weimar notes that when he attempted to settle up his account with Lyons, he requested the actual cost information, as he believed the work was a time and materials project. Weimar also asserts that even if it was a fixed price contract, the poor quality of the work, which required corrective measures, amounted to a breach of the agreement, thereby excusing any further performance by Weimar.

¶26 "Whether or not a contract exists is a combined issue of fact and law." *Austin v. Cash,* 274 Mont. 54, 59, 906 P.2d 669, 672 (1995). We conclude that the record contains sufficient evidence to support the District Court's findings and conclusions that there had been a written fixed price contract, followed by subsequent binding oral agreements. The written document contained a detailed description of the tasks to be performed by Lyons and the respective price for each, totaling $19,810, was signed by both parties, and supported by consideration. The existence of a subsequent oral agreement for additional work was supported by evidence of agreed-upon work outside the scope of the written contract, such as the pier caps, wall caps, and mechanical pad. Thus, despite the existence of conflicting evidence, we conclude that the court's determination of the existence of multiple agreements was supported by substantial credible evidence.

¶27 With regard to Weimar's contention that, even if there was a fixed price contract, the poor quality of Lyons' work, which required corrective measures, constituted a breach of the agreement, thereby excusing Weimar's performance, we conclude that, based on our review of the record, the District Court correctly determined that Lyons completed the work he had agreed to. To the extent deficiencies existed in the work, they

10

were either waived by Weimar's actions, or Weimar was granted reimbursement for their repair. Regarding Weimar's haste on the project, Lyons testified that:

> As soon as we got done with the pool deck, [Weimar] said, "I need some help here. I need these caps poured on the fountains right away." And I told him that I could see – with the radius walls and stuff, I could try to form that cap up but that it was going to take a long time. And I was real busy and I told him that I didn't have time to do it. And he said his crew would do it. I said, "Well, if they could form it up, we could come out and pour it."

¶28    Then, when it came time to pour, Lyons noticed that the forming had been completed improperly by Weimar's crew and mentioned that it may lead to problems, yet was told by Weimar employee Monte Berg that "[w]e've got to have it poured, let's do it." Berg testified that "Mike [Lyons] didn't have time to do the forming on Mr. Weimar's schedule. And we were just told to go out and do the best we could, put it together, and try to make something happen." Lyons testified that Weimar told him to pour despite imminent rain and that Weimar had stated "he would take responsibility," with Berg likewise testifying that he overhead Weimar tell Lyons to pour the concrete in the rain. The record demonstrates that deficiencies found in the sidewalk were the result of pouring the concrete in the rain. This continual rush to complete the project, even at the risk of having to repair the work later, sufficiently demonstrated that deficiencies in Lyons' work were occasioned by Weimar's own haste.

¶29    Consequently, Lyons' completion of the work entitled him to the full $19,810, as called for by the written contract, less the amount, discussed below, Weimar was granted for repair of deficiencies in the work. Regarding the oral agreements, the court weighed Weimar's testimony about the appropriate amount owed against Lyons' testimony that he

11

charged his regular, fair rate. "It is well-established that the testimony of one witness is sufficient to prove any fact." *Eustance v. State,* 2005 MT 34, ¶ 11, 326 Mont. 77, ¶ 11, 107 P.3d 478, ¶ 11 (citations omitted). Moreover, "[i]n nonjury trials, the credibility of a witness and the weight which his or her testimony should be afforded is within the sound discretion of the district court. We will not reweigh the evidence and substitute our judgment for that of the court under such circumstances." *In re Marriage of Epperson*, 2005 MT 46, ¶ 23, 326 Mont. 142, ¶ 23, 107 P.3d 1268, ¶ 23 (citations omitted). Therefore, Lyons' testimony, even if self-serving, was sufficient to support the District Court's determination that his billing was the correct amount due for the additional services provided.

¶30   We affirm the District Court's findings and conclusions regarding the parties' agreement and the amounts owed thereunder.

¶31   *(3) Did the District Court err by awarding Weimar only $8,967.19 for the costs of repair or replacement work done by Clark-Salsbury Contracting, Inc.?*

¶32   Weimar argues the District Court erred in allowing only $8,967.19 in reimbursement for the cost of repair or replacement of the deficiencies in Lyons' work. Weimar contends that the court intended to allow for the complete "cost of repair or replacement done by Clark-Salsbury Contracting, Inc.," Finding of Fact #11, but erred by failing to grant the entire amount of Clark-Salsbury's bill, or $30,169. Lyons responds that Weimar's belief about the court's intention is incorrect, offering that such a result would be directly inconsistent with the court's conclusion that Weimar had contributed to the deficient work by his actions. We agree with Lyons.

12

¶33   As seen above, it was established that Weimar waived or caused many of the deficiencies by accepting the work, making improper additions to the work, and issuing hasty and ill-conceived commands. Although not assessing monetary values to the individual losses occasioned by each of Weimar's actions, the District Court nonetheless had before it the evidence of those actions and their consequences, which provided substantial evidence for its assessment of costs necessary to repair those deficiencies that were Lyons' responsibility. Although the parties did not attempt to apportion the Clark-Salsbury bill between them during the trial, the District Court could properly do so by making inferences from the evidence regarding the cause of the deficiencies. The court thus concluded that $8,967.19 was an appropriate measure for reimbursement of Weimar for defects in the work not caused by Weimar's own actions. We conclude that the District Court did not err in so doing.

*¶34   (4) Did the District Court err in allowing Mike Lyons to offer expert testimony concerning the quality of the work?*

¶35   Weimar argues that because Lyons failed to serve an expert disclosure statement required by the scheduling order, he should have been barred from testifying as an expert at trial. Lyons counters that he has over thirty years of concrete experience, which well qualified him to testify regarding the quality of his own product, but, in any event, insists that he did not need to be named as an expert to offer his opinion on why his own work suffered under the circumstances of the construction. Moreover, Lyons contends he did not disclose himself as an expert, because Weimar failed to disclose any experts.

¶36    The spirit of the Montana Rules of Civil Procedure requires liberal disclosure on the part of all parties, including the disclosure of witnesses. *Smith v. Babcock*, 157 Mont. 81, 92, 482 P.2d 1014, 1020 (1971). As such, this Court has recognized that allowing an undisclosed expert witness to testify may constitute reversible error. *Miranti*, 253 Mont. at 235, 833 P.2d at 166 (determining that the district court abused its discretion when it allowed two witnesses to testify as experts, when they had only been listed as lay witnesses); *see also Vestre v. Lambert*, 249 Mont. 455, 462, 817 P.2d 219, 223 (1991) (Court committed reversible error when it allowed the defendant to solicit undisclosed expert testimony from a witness previously called to discuss factual issues, when neither party had listed the witness as an expert.). This rule is founded on concerns over prejudice: "Failure to disclose an expert witness will usually prejudice the opposing party because it has (1) no time to prepare for the witness, (2) no time to effectively plan for cross-examination of the witness, and (3) no time to obtain an expert to refute or question the testimony of the witness." *Superior Enterprises v. Montana Power Co.*, 2002 MT 139, ¶ 18, 310 Mont. 198, ¶ 18, 49 P.3d 565, ¶ 18 (citing *Babcock,* 157 Mont. at 92, 482 P.2d at 1020).

¶37    However, such concerns about prejudicial impact are not evident under the circumstances here. Lyons was not only the contractor who had performed the work, he was also the party being sued. It was obvious that he would testify regarding the extent and quality of his own work. Indeed, Weimar's responses to Lyons' discovery requests listed Lyons as a person Weimar expected to call as a witness and further explained that he expected Lyons to testify about the defects in his work. Weimar knew Lyons would

14

testify, had ample time to plan his examination of Lyons, and was prepared to respond to Lyons' testimony with his own expert testimony regarding the quality of Lyons' workmanship. Therefore, Weimar suffered no prejudice.

¶38 We conclude that the District Court did not abuse its discretion in permitting Lyons to give opinion testimony concerning the quality of his own workmanship and the reasons for the lower quality of work on this project.

¶39 *(5) Did the District Court err by concluding that Lyons had standing to file his construction lien and counterclaim?*

¶40 Prior to trial, Weimar sought to expunge Lyons' lien on the grounds that the lien claimant— "Mike Lyons doing business as Lyons Concrete, Inc."—was without standing because, at the time of the lien filing, Lyons Concrete, Inc., had been involuntarily dissolved as a Montana corporation. The District Court denied Weimar's motion, and ruled thereafter that Weimar was equitably estopped from denying the corporate existence of Lyons Concrete, Inc., which it determined to be a valid lien claimant. The District Court further ruled that any relief awarded to Weimar would be enforceable against any of the Lyons entities and individuals. After trial, the court concluded that "Defendants Mike Lyons and Lyons Concrete, Inc.," were entitled to judgment on the lien.

¶41 Weimar argues that because the lien was recorded and sought to be enforced by "Mike Lyons doing business as Lyons Concrete, Inc.," which Weimar describes, in light of the corporation's involuntary dissolution, as an "unregistered fictitious party," it cannot be sustained for failure to comply with § 30-13-215, MCA, which provides that

15

"[n]o person or persons conducting or transacting business in this state without an effective certificate of registration of an assumed business name . . . may maintain any suit or action in any of the courts of this state under such name." Thus, Weimar reasons that, because Lyons Concrete, Inc., was not registered, and "Mike Lyons, individually," was not named on the lien as a claimant, neither Lyons Concrete, Inc., nor Mike Lyons were valid lien claimants and the construction lien was void *ab initio* and unenforceable. Further, he asserts that Lyons' counterclaim was similarly afflicted. We disagree.

¶42 Pursuant to Montana's construction lien statutes, a person who furnishes services or materials pursuant to a real estate improvement contract may claim a construction lien to secure the payment of the contract price. Section 71-3-523, MCA. "This Court has uniformly held that the requirements of the mechanic's lien[2] statutes as to procedure will be strictly enforced. Once the procedure has been fulfilled, the statutes will be liberally construed so as to give effect to their remedial character." *General Elec. Supply Co., Etc. v. Bennett*, 192 Mont. 110, 113-14, 626 P.2d 844, 846 (1981) (citations omitted).

¶43 Weimar challenges none of the procedures employed by Lyons, only the names listed as lien claimants. In *Kosena v. Eck*, 195 Mont. 12, 22, 635 P.2d 1287, 1293 (1981), the trial court noted several alleged defects in the mechanic's lien, including that the lien had been filed by "Bruce A. Kosena," but that the action had been brought by "Bruce A. Kosena, d/b/a The Pub." This Court described the alleged error as an "inconsequential technical discrepancy" and concluded it would not invalidate an otherwise valid lien,

---

[2]Now known as a "construction lien." *See* § 71-3-521 et seq., MCA.

16

repeating the admonition that the lien statute "must be interpreted liberally to protect the right of the lien." *Kosena*, 195 Mont. at 22, 635 P.2d at 1293.

¶44 Likewise, it is clear in this case that Mike Lyons was listed individually as a lien claimant. The lien adequately identified Mike Lyons and imparted notice to Weimar of Mike Lyons' status as a lien claimant. The distinction Weimar raises is an "inconsequential technical discrepancy" that caused no prejudice to Weimar. *Kosena*, 195 Mont. at 22, 635 P.2d at 1293. Construing the statute liberally to protect the right to lien, we conclude Mike Lyons had standing to pursue a lien as "[a] person who furnishes services or materials pursuant to a real estate improvement contract," § 71-3-523, MCA, and to file a counterclaim to foreclose the lien.

¶45 Regarding Lyons Concrete, Inc., the District Court concluded that the corporation was likewise a valid lien claimant and entitled to judgment "under the doctrine of Corporation by Estoppel." Weimar acknowledges this equitable doctrine, but argues that its application here makes no sense because a dissolved corporation does not exist and could not receive payment on any judgment awarded in its favor. Guidance on the doctrine is provided by Official Comments to § 35-1-119, MCA:

> This doctrine [corporation by estoppel] provides that if (a) a business held itself out as a corporation, and (b) if a third party dealing with it assumed it to be a corporation, both the corporation and the third party are estopped from raising the issue as to whether or not the corporation is validly incorporated.

17

"In short, the fact that an entity is not a corporation[3] should not, in and of itself, be a defense to an otherwise valid obligation." General Comments to § 35-1-119, MCA. We applied this doctrine in *Valley Victory Church v. Sandon*:

> The doctrine prevents a party from denying a party-corporation's status. *See, e.g., Cranson v. Int'l Business Machs. Corp.* (Md. 1964), 200 A.2d 33, 39 ("[W]here one has recognized the corporate existence of an association, he is estopped to assert the contrary with respect to a claim arising out of such dealings."); *Timberline Equip. Co., Inc. v. Davenport* (Or. 1973), 514 P.2d 1109, 1112. The doctrine may apply to the corporation itself, or to the corporation's opponent. *Compare Ohaco Sheep Co., Inc. v. Heirs of Ohaco* (Ariz. App.1986), 713 P.2d 343, 346 (applying doctrine to stockholders or partners of the purported corporation); *with Lettinga v. Agristor Credit Corp.* (6th Cir.1982), 686 F.2d 442, 446 ("A person or entity who has contracted with, or otherwise dealt with a company as a corporation is estopped to deny its corporate existence."). The doctrine rests upon equitable principles, and should only be applied when equity requires it.

*Valley Victory Church*, 2005 MT 72, ¶ 26, 326 Mont. 340, ¶ 26, 109 P.3d 273, ¶ 26.

¶46 We conclude that equity requires the doctrine's application here. In support of his motion for partial summary judgment on this issue, Lyons filed an affidavit averring that he was unaware of the involuntary dissolution of Lyons Concrete, Inc., that he continuously acted in good faith as a corporation until he was made aware of the dissolution, and that he filed new articles of incorporation under the same name of Lyons Concrete, Inc., immediately upon learning of the involuntary dissolution. Moreover, Lyons Concrete, Inc., fulfilled its contract with Weimar in good faith. For Weimar's part, he contracted with the entity as a corporation, accepted the benefit of the entity's performance, and even partially paid the entity for that performance.

---

[3]Including, according to the General Comments, an entity "whose certificate has been revoked by the state."

18

¶47 We conclude from these circumstances that it would be inequitable for Weimar to now avoid an obligation because Lyons Concrete, Inc., though having acted in good faith through its principals, had been involuntarily dissolved. Weimar is estopped from denying the corporate status of Lyons Concrete, Inc., and, with that conclusion, it was not necessary for Lyons Concrete, Inc., to register as an assumed business name under § 30-13-215, MCA. Lastly, we are confident that Lyons will devise a solution to the practical issue of whom Weimar should pay, but, in any event, we will leave that issue to be resolved on remand.

¶48 **(6) Did the District Court err in granting Lyons interest at 1.5 percent under § 28-2-2104(1), MCA?**

¶49 Prior to trial, Lyons filed a motion in limine to forbid any evidence in support of Weimar's defense to Lyons' claim under § 28-2-2101 et seq., MCA, regarding assessment of interest on construction contracts. The District Court granted the motion, forbidding Weimar from contesting the applicability of the statute to his contract with Lyons, both as a discovery sanction for Weimar's failing to answer discovery and upon Weimar's admission that the total cost of the construction work on Weimar's property exceeded $400,000.[4] Thus, the District Court, in its findings of fact, conclusions of law and judgment, concluded that, pursuant to § 28-2-2104, MCA, Lyons was entitled to

---

[4]Section 28-2-2107, MCA, provides: "The provisions of this part do not apply to residential projects or improvements to real property intended for residential purposes with a total cost of less than $400,000."

19

recover interest at the rate of 1.5 percent per month upon the sum of $16,763.81 from August 18, 2003, until paid.[5]

¶50    Weimar first argues that, because he did not receive notice of the interest provision, it cannot be applied to him by virtue of § 28-2-2104(3), MCA, which provides that "[i]nterest is not required to be paid pursuant to this section unless the owner, contractor . . . has been notified of the requirements of this section at the time the request for payment is made." However, Lyons notes that Weimar did not raise this lack of notice provision at any time prior to or during the trial, instead raising it for the first time in his post-trial motion to alter or amend, and at that point there was no evidence in the record from which the notice issue could be determined. As such, we agree with Lyons that Weimar waived his right to contest the lack of notice. The interest statute had been raised prior to trial by Lyons and was the subject of pre-trial briefing by the parties. While Weimar has been prohibited from contesting the applicability of the statute to the contract, that ruling did not bar him from demonstrating that notice, as required by the statute, had not been given. Weimar had opportunity to raise the lack of notice as a defense and failed to do so.

¶51    Weimar also argues that the District Court erred in concluding that Lyons was entitled to recover interest under these statutory provisions, because Weimar's contract with Lyons did not call for construction work valued greater than $400,000. Weimar

_____

[5]Section 28-2-2104(1), MCA, provides: "If a periodic or final payment that is required by a construction contract to be paid by an owner to a contractor is delayed by more than 30 days from the date the payment is required by the contract to be made, the owner shall pay to the contractor interest . . . at the rate of 1.5% a month . . . ."

does not dispute that all of the improvements to his property totaled more than $400,000, but he argues this interest provision only applies when an individual contract costs that much. Weimar reasons that if this statute was applied to Lyons' contract, then it would likewise apply to any other small construction project—"a dog run, a fence or a sprinkler system"—completed on a property on which over $400,000 in construction work had previously been completed. Such a result, Weimar maintains, would be absurd.

¶52 We agree with Weimar's interpretation of the statute. The interest obligation is imposed upon "a periodic or final payment that is required by a construction contract to be paid by an owner to a contractor . . . ." Section 28-2-2104(1), MCA. "Construction contract" is defined as "a written agreement[6] between an owner and a contractor for the contractor to construct or improve" real property. Section 28-2-2101(1), MCA. In turn, "improvement" means "all or a part of a residential or commercial building, structure, area of real property . . . ." Section 28-2-2101(5), MCA.

¶53 An exception to the interest assessment is made for "improvements to real property intended for residential purposes with a total cost of less than $400,000." Section 28-2-2107, MCA. From a plain reading of these provisions, we conclude that the exception applies to a construction contract between an owner and contractor for an improvement to residential real property with a total cost of less than $400,000. Clearly, Weimar's contract with Lyons was for less than $400,000, and, therefore, this interest statute did not apply. Other interest statutes, not at issue here, may be applicable.

---

[6]No argument is made that this statute is inapplicable because the agreement here included oral components.

¶54 We thus turn to the District Court's order prohibiting Weimar from contesting the application of the interest statute to the contract as a discovery sanction. Having concluded that the District Court erred in determining that the statute applied, we further conclude that it was inappropriate and an abuse of discretion for the District Court to impose the interest under an inapplicable statute as a sanction for discovery abuse. While a sanction may have been appropriate for the discovery error, Weimar should not have to bear the penalty of an interest assessment under a statute which, as a matter of law, did not apply to his contract, and that assessment is reversed. Upon remand, if Lyons yet clamors for imposition of a discovery sanction that matter may be brought to the attention of the District Court.

¶55 *(7) **Is Weimar entitled to his costs and attorney fees as the prevailing party?***

¶56 With this Court's determination of the issues herein, we also conclude that the District Court correctly concluded that Lyons, and not Weimar, was the prevailing party. Thus, Weimar is not entitled to his costs and attorney fees.

¶57 Affirmed in part, reversed in part, and remanded for entry of judgment consistent herewith.

/S/ JIM RICE

We concur:


/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART