FILED

May 19 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0394

DA 14-0394

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 132

IN THE MATTER OF THE ESTATE OF
VIOLET H. QUIRIN, a/k/a VI QUIRIN,

     Deceased.

APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and For the County of Missoula, Cause No. DP-11-14
                  Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Linda Osorio St. Peter, St. Peter Law Office, P.C.; Missoula, Montana

       For Appellee:

           Harold V. Dye, Dye & Moe, PLLP; Missoula, Montana

                                  Submitted on Briefs:  April 8, 2015
                                         Decided:  May 19, 2015

Filed:

                                      _____
                                                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Mavoureen Speiser (Speiser) appeals from the order of the Montana Fourth Judicial District Court, Missoula County, confirming probate of Violet Quirin's June 23, 2010 will. We affirm.

## ISSUES

¶2 We review the following issues:

*1. Did the District Court err when it confirmed probate of the 2010 will?*

*2. Did the District Court err by issuing an order inconsistent with its pretrial order?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Violet Quirin (Quirin) died on January 10, 2011. She was survived by two adult daughters, Speiser and Cathie Schmiedeke (Schmiedeke). Prior to her death, Quirin had executed three wills. The first was signed on November 16, 2005, the second was signed on March 1, 2007, and the third was signed on June 23, 2010. In the 2005 and 2007 wills Quirin divided her property equally between her daughters. However, in the 2010 will, Quirin wrote, "I acknowledge my love and respect for my daughters, [Speiser] and [Schmiedeke], but make no provision for them in this will," and she instead divided her estate among several friends and charitable organizations.

¶4 The 2010 will was the product of Quirin's interactions with attorney Nancy Moe. Quirin contacted Moe on June 2, 2010, and asked her to draft a new will for Quirin. Moe met with Quirin for around an hour and a half on June 4, 2010. Quirin told Moe that her daughters were the current beneficiaries of her will and that she no longer wished for

2

them to benefit from her estate. She told Moe that she would like to change her will to benefit organizations and individuals with whom she had long, trusting relationships. Moe advised Quirin that a will contest might result from such a change, but Quirin persisted, stating that she and her daughters were "not close." Quirin told Moe that she wanted to leave her house to her church, to leave the money in her bank accounts to Missoula Aging Services, and to dispose of certain personal property to several friends. Quirin also told Moe that she had given her friend Kristine Fankell $100,000 to use for Quirin's benefit, and that she wished for Fankell to keep any portion of the $100,000 that remained at the time of Quirin's death.

¶5 Moe concluded that Quirin intended to make a new will, understood that she was making a new will, understood her assets, and otherwise understood the consequences of what she was doing. Moe, therefore, drafted a will based on her June 4 discussion with Quirin. She mailed a draft of the will to Quirin on June 18, 2010. On June 23, 2010, Moe, accompanied by two paralegals from her office, visited Quirin's home. Moe and the paralegals observed that Quirin was dressed and articulate and that there was nothing to suggest that Quirin did not have testamentary capacity. Quirin and Moe spoke about the will and their June 4 conversation. Quirin signed the will prepared by Moe during this visit. The paralegals signed the will as witnesses.

¶6 When Fankell visited Quirin several months later, Quirin discussed the 2010 will and told Fankell that she was adamant about keeping the will as it was. Quirin also told Fankell that the 2010 will named Fankell personal representative of Quirin's estate.

3

¶7    On January 18, 2011, following Quirin's death, Fankell submitted the 2010 will for informal probate and asked that, according to the terms of the will, she be appointed personal representative of Quirin's estate. The Clerk of the District Court granted these requests, ordering informal probate and appointing Fankell personal representative. On May 3, 2011, Speiser petitioned for formal probate of the will Quirin executed on March 1, 2007. She claimed that Quirin lacked testamentary capacity when she signed the 2010 will and that Quirin's estate should be distributed according to the terms of the 2007 will.

¶8    Prior to the matter going to trial, the parties agreed and stipulated to numerous facts and to admission of several exhibits. The parties also quoted language from *In re Estate of Lightfield*, 2009 MT 244, 351 Mont. 426, 213 P.3d 468, and stipulated that the language provided the test for determining testamentary capacity. The court entered a pretrial order on April 10, 2014, that listed the stipulated facts, exhibits, and test for testamentary capacity. The order also identified fourteen issues of fact that remained to be litigated and specified that no issues of law were contested.

¶9    On June 20, 2014, following a trial, the District Court issued findings of fact, conclusions of law, and an order. The District Court ultimately decided that Speiser failed to show that Quirin lacked testamentary capacity, and it confirmed probate of the 2010 will. Speiser appeals.

## STANDARDS OF REVIEW

¶10    We review a district court's findings of fact to determine if they are clearly erroneous. *In re Estate of Lambert*, 2006 MT 229, ¶ 9, 333 Mont. 444, 143 P.3d 426. A court's findings are clearly erroneous if they are not supported by substantial evidence,

4

the court misapprehended the effect of the evidence, or we are convinced by our review of the record that the district court made a mistake. *Lambert*, ¶ 9. We review a district court's conclusions of law for correctness. *Lambert*, ¶ 9.

**DISCUSSION**

¶11    *1. Did the District Court err when it confirmed probate of the 2010 will?*

¶12    Speiser contends that Quirin lacked testamentary capacity to execute the 2010 will. She contends that the District Court erred when it found otherwise, arguing that it applied an incorrect standard of law and that its finding was clearly erroneous. We disagree.

¶13    Proponents of a will have the burden of establishing prima facie proof of its due execution. Once a duly executed will is submitted for probate, the testator's competence is presumed, and any contestants have the burden of establishing lack of testamentary capacity. *Lightfield*, ¶ 28. Here, the District Court decided that the 2010 will was duly executed. Speiser does not contest this decision, and she, therefore, had the burden to establish lack of testamentary capacity.

¶14    For over fifty years, we have stated that the test for determining testamentary capacity is:

> [A] testator is competent if he is possessed of the mental capacity to understand the nature of the act, to understand and recollect the nature and situation of his property and his relations to persons having claims on his bounty whose interests are affected by his will . . . . The testator must have sufficient strength and clearness of mind and memory to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and the nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them.

5

*E.g.*, *Lightfield*, ¶ 27; *In re Estate of Prescott*, 2000 MT 200, ¶ 34, 300 Mont. 469, 8 P.3d 88; *In re Estate of Lien*, 270 Mont. 295, 299, 892 P.2d 530, 532 (1995); *In re Estate of Bodin*, 144 Mont. 555, 560, 398 P.2d 616, 619 (1965). In more recent cases, we have retained this test while restating it as "testamentary capacity requires that the testator be aware of three elements: (1) the nature of the act to be performed, (2) the nature and the extent of the property to be disposed of, and (3) the objects of his or her bounty." *Lightfield*, ¶ 28; *In re Estate of Harms*, 2006 MT 320, ¶ 14, 335 Mont. 66, 149 P.3d 557; *Prescott*, ¶ 34.

¶15    Speiser contends that awareness of these three elements is an additional component rather than a restatement of the test for testamentary capacity. Speiser, therefore, argues that the District Court erred when it based its testamentary capacity finding solely on Quirin's awareness of the three elements. She states that before reaching such a decision, the District Court was also required to consider whether Quirin possessed the "mental capacity to understand" and "sufficient strength and clearness of mind and memory to know" the elements.

¶16    This is incorrect. In *Prescott*, we affirmed the decision of a district court granting summary judgment on the question of whether the testator lacked testamentary capacity. *Prescott*, ¶¶ 20, 34, 39, 42, 46, 48. In that case, we limited our analysis to evidence concerning the testator's awareness of the three elements. We did not independently consider the testator's mental capacity to understand the elements. We also did not independently consider the testator's strength and clearness of mind and memory to know

6

the elements. We concluded that the District Court did not err by granting summary judgment based solely on uncontroverted evidence of the testator's awareness of the three elements. *Prescott*, ¶¶ 35-48. Similarly, the District Court in this case did not err by basing its testamentary capacity finding solely on Quirin's awareness of the three elements.

¶17 Speiser also contends that the District Court's testamentary capacity finding was incorrect. Whether a testator has testamentary capacity is a question of fact, which we review for clear error. *Lightfield*, ¶¶ 24, 29. We will only reverse a district court's finding regarding testamentary capacity if it is not supported by substantial evidence, the court misapprehended the effect of the evidence, or we are convinced by our review of the record that the district court made a mistake. *Lambert*, ¶ 9. Here, the District Court's testamentary capacity finding was supported by substantial evidence, the effect of which the District Court did not misapprehend.

¶18 As discussed above, testamentary capacity exists if, at the time the will is executed, a testator is "aware of . . . (1) the nature of the act to be performed, (2) the nature and the extent of the property to be disposed of, and (3) the objects of his or her bounty." *Lightfield*, ¶ 28. The District Court found that Quirin was aware of each of the three elements at the time of execution, and this finding was supported by substantial evidence.

¶19 First, Quirin's awareness of the nature of the will execution was supported by substantial evidence. Quirin arranged, specifically and of her own volition, to meet a lawyer and have her will changed. She then kept track of and persisted in the process for

7

almost a month. The three people present when the will was executed testified that Quirin understood what she was doing. Also, several months after the 2010 will was executed, Quirin discussed the will, the changes she had made, and expressed her desire to leave the will unchanged.

¶20 Second, Quirin's awareness of the nature and extent of her property was also supported by substantial evidence. During the months surrounding execution of the 2010 will, Quirin had several interactions with her banks, withdrawing money and changing the names on accounts. She kept large amounts of money in her house but was able to recall where the money was kept and approximately how much money was hidden. When discussing with Moe the changes to make to her will, Quirin was able to identify her assets, including her cash, the amount of money she had given to Fankell for her care, her bank accounts, and her house.

¶21 Finally, Quirin's awareness of the objects of her bounty was also supported by substantial evidence. Quirin specifically requested removal of her daughters from her will. After she was advised against doing so, Quirin persisted. As such, the will specifically mentioned Speiser and Schmiedeke and specifically excluded them from succeeding to the estate. For the months following execution of the will, Quirin seemed to understand that she had removed her daughters from her will, describing this to Fankell and stating that preventing them from succeeding to her estate continued to be her wish. Moreover, Quirin's removal of Speiser and Schmiedeke did not seem accidental. Instead, it was knowing conduct that followed a pattern of increasing estrangement between Quirin and her daughters. It followed Quirin moving out of

8

Speiser's house, Quirin accusing Speiser of stealing money from her, Quirin changing the locks to her house so that neither Speiser's nor Schmiedeke's keys would work, and Quirin removing Speiser's name from her bank accounts.

¶22 Speiser does not contend that evidence supporting the foregoing facts does not exist. Instead, she argues that some evidence contradicted the District Court's findings and, particularly, that some evidence indicated that Quirin did not understand the nature and extent of her property. However, it is not the role of this Court to weigh conflicting evidence or to determine whether there is support for findings that were not made. *In re Estate of Bradshaw*, 2001 MT 92, ¶¶ 11, 20, 305 Mont. 178, 24 P.3d 211. Where conflicting evidence exists, we will not substitute our judgment for the district court's. *Harms*, ¶ 12. Thus, the mere presence of conflicting evidence does not mean that the District Court's finding of testamentary capacity was clearly erroneous, nor does it alter our conclusion that the District Court's finding of testamentary capacity was supported by substantial evidence. *See Harms*, ¶ 35.

¶23 *2. Did the District Court err by issuing an order inconsistent with its pretrial order?*

¶24 Speiser contends that the District Court deviated from the pretrial order when it entered its order confirming probate of the 2010 will. She contends that the District Court applied a different legal standard for testamentary capacity than the one specified in the pretrial order and that the District Court did not rule on all of the factual issues identified in the pretrial order. For these reasons, she argues that the District Court violated M. R. Civ. P. 16(d) and failed to afford her due process.

9

¶25    The District Court did not err by applying a different legal standard than the one specified in the pretrial order. Instead, the District Court applied the standard specified in the pretrial order. As discussed above, the District Court applied the test identified in *Lightfield*, which was also the test quoted in the pretrial order and the test that Speiser argues the District Court should have applied.

¶26    The District Court also did not err by not specifically addressing each factual issue identified in the pretrial order. Speiser contends that district courts are required to address every factual issue identified in a pretrial order. However, this Court has never adopted such a rule, and Speiser does not provide any reasons why we should do so now. Instead, she recommends this rule in conclusory statements and bare citation to *Baston v. Baston*, 2010 MT 207, 357 Mont. 470, 240 P.3d 643; and *Weimar v. Lyons*, 2007 MT 182, 338 Mont. 242, 164 P.3d 922. As these cases do not stand for such a rule and are distinguishable from the present case on their facts, and as we are not required to develop legal analysis to support Speiser's conclusory statements, we hold that the District Court did not err when it did not specifically address each of the factual issues identified in the pretrial order.

¶27    In *Baston* and *Weimar*, we required the district courts and parties to limit evidence, arguments, and decisions at trial to matters identified in a pretrial order. *Baston*, ¶¶ 19-20; *Weimar*, ¶¶ 20-21. We reasoned that the purpose of a pretrial order is to "prevent surprise, simplify the issues and permit counsel to prepare their case for trial on the basis of the pretrial order." *Baston*, ¶ 19; *accord Weimar*, ¶ 20. We have repeatedly reached similar conclusions based on this same rationale. *E.g., Murphy*

*Homes, Inc. v. Muller*, 2007 MT 140, ¶¶ 44-45, 337 Mont. 411, 162 P.3d 106; *Zimmerman v. Robertson*, 259 Mont. 105, 111, 854 P.2d 338, 342 (1993).  However, we have never required district courts to address every factual issue identified in a pretrial order.  *See Baston*, ¶¶ 19-20; *Weimar*, ¶¶ 20-22; *Murphy Homes, Inc.*, ¶¶ 44-45; *Zimmerman*, 259 Mont. at 111, 854 P.2d at 342.  Nor does the rationale of the foregoing cases require adoption of such a rule.  Unlike in *Baston* and *Wiemar*, the District Court in this case did not address any issues beyond the scope of the pretrial order.  Instead, it did not explicitly consider several factual issues that it identified as unresolved in its pretrial order.  Unlike in *Baston* and *Weimar*, this did not create surprise issues, hamper the parties' efforts to prepare for trial, or otherwise prejudice the parties.  As Speiser does not provide any arguments for adopting such a rule, beyond bare citation to these distinguishable cases, we hold that the District Court did not err when it did not specifically address every factual issue identified in its pretrial order.

¶28    It also did not deprive Speiser of due process by not addressing those factual issues.  Due process "requires a reasonable notice as to give everyone interested their opportunity to be heard." *Baston*, ¶ 18.  The District Court did not address any issues not identified in the pretrial order.  By virtue of the pretrial order, Speiser was aware of all of the potential issues to be litigated and the legal standards that would be applied.  She was given notice of these issues at a time that left her with ample opportunity to prepare her case.  The District Court's decision to not explicitly address all of the issues did not deprive her of notice or the opportunity to be heard.

11

**CONCLUSION**

¶29 The District Court did not err when it determined that Quirin possessed testamentary capacity at the time she executed the 2010 will. This finding was based on the correct legal standard and was supported by substantial evidence. The District Court also did not err by not specifically addressing each of the factual issues identified in the pretrial order. For these reasons, the District Court's order confirming probate of the 2010 will is affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA